## THE NEW HOPE AND DELAWARE BRIDGE COMPANY *vs.* THE PHENIX BANK.

The directors or managers of a banking corporation are chargeable, it seems, with notice of such matters relating to the ordinary business of the institution as are known to their cashier.

The plaintiffs, a corporation chartered by the legislature of New Jersey, and exercising banking powers, increased their capital by new subscriptions; and by resolution of the board of managers, directed the installments on the stock held in the state of New-York to be paid in at the defendants' bank, in the city of New-York, which was accordingly done to a large amount, in May, 1835. The defendants' cashier, who was also one of the managers of the plaintiffs' bank, drew out and loaned a portion of the funds so deposited, to be repaid on demand, and sent a statement of such loans to the plaintiffs' cashier at the office of the plaintiffs kept in Philadelphia, requesting at the same time to be informed if the loans were not satisfactory so that he might call them in. The plaintiffs' cashier replied that all was satisfactory. The board of managers afterwards met and took action in relation to the business in New-York, but expressed no dissatisfaction in respect to the loans so made, nor in any manner repudiated them. *Held*, that the managers were chargeable with notice of the fact that the loans had been made from the time it was communicated to their cashier, or at all events from the time of their subsequent meeting. And *held further*, that by their silence and acquiescence they had ratified the loan, and therefore that the defendants were not liable for permitting the funds to be withdrawn from their bank and loaned without authority.

THE New Hope and Delaware Bridge Company brought assumpsit in the superior court of the city of New-York, against the Phenix Bank. The declaration contained the common

money counts.    The cause was tried before Chief Justice OAK-
LEY, in October, 1845, when the defendants had a verdict which
the superior court, on a bill of exceptions, refused to set aside.
After judgment, the plaintiffs brought error to this court.    The
object of the suit was to recover a sum of money belonging to
the plaintiffs, which in May or June, 1835, had been deposited
with the defendants, and which Mr. Delafield, the cashier of the
defendants, and one of the managers of the plaintiffs' corporation,
had drawn from the defendants' bank and loaned on account of
the plaintiffs.    In the opinion of RUGGLES, J. will be found a
sufficient statement of the facts.

*S. A. Foot*, for plaintiffs in error.    I. The amount of the
item in dispute, viz. $34,500, having been rightly deposited in
cash in the bank of the defendants by the plaintiffs, the defend-
ants are bound to pay it to the plaintiffs, or show a legal discharge
from the payment of it.

II. Mr. Delafield was not authorized by the plaintiffs to lend
this sum in the city of New-York.    The president and cash-
ier of the plaintiffs, who assume to give him such authority,
had themselves no power to do so.    A president of a corpo-
ration is a mere agent, and has no powers, except those
conferred upon him by the *charter, by-laws*, or *course of busi-
ness. (Life & Fire Ins. Co. v. Mechanics' Fire Ins. Co. 7 Wend.*
33.)    By the charter of the plaintiffs only two duties are assigned
to their president, independent of the board of managers, viz. to
sign certificates of stock, and to sign orders on the treasurer as di-
rected by the board.    In conjunction with the board of managers
he is intrusted with the management of the affairs of the plaintiffs,
and with the board has a variety of powers.    The by-laws give
the president no power.    No *course of business* is shown or
alledged, giving the president any power by implication.

The cashier of a corporation is also a mere agent, and derives
his authority from the same sources as the president, viz. the
*charter, by-laws* and *course of business*.    No such officer is
mentioned in the charter, but the president and managers have

power to appoint one. They did appoint one. They gave him, at least by implication, the general powers belonging to his office. His general duties by law are to receive and pay. Neither he nor the president have authority to make loans or discounts; that power belongs exclusively to the board of directors or managers. (*Angell & Ames on Corp.* 246, *and case there cited of Bank U. S.* v. *Dunn,* 6 *Pet. Rep.* 51, 58.) The directors can not confer this power on a cashier, it being one which can not be delegated. (*Ang. & Ames on Corp.* 211, *and case there cited of Perry* v. *Millander,* 3 *Louis. Rep.* 568; *Comm'rs* v. *Bank of Buffalo,* 6 *Paige,* 497, 504.) No *course of business* is shown or alledged, giving the cashier power to authorize loans, nor could any such power be given him by implication, as the board of managers had not authority to confer it even directly.

III. The plaintiffs have not ratified the loan. Notice of the loan to the cashier of the plaintiffs is not notice to their board of managers, it being merely notice to the cashier of an act done under an authority given by him, which he had no power or right to give. (*Ang. & Ames on Corp.* 247, *and cases there cited; Bank United States* v. *Davis,* 2 *Hill,* 451, 461; *Fulton Bank* v. *Benedict,* 1 *Hall,* 557, 8; *Washington Bank* v. *Lewis,* 22 *Pick.* 24, 31; *Fulton Bank* v. *Sharon Canal,* 4 *Paige,* 136; *Farmers' Bank of Geneva* v. *Commercial Bank, MS. opinion of Sup. Court; Story on Agency,* § 140.) There are two essentials to the notice; 1. It must be given or received while the agent is acting within the scope of his agency. 2. It must be given or received of or concerning a matter committed to his charge as agent.

The board of managers of the plaintiffs had no power to authorize or ratify the series of loans made by Mr. Delafield, and of which the item in question is one. Boards of directors or managers are mere agents, and have no powers except those conferred by the act of incorporation, or by the corporators acting collectively; and the same rules are applicable to them which are applied to agents of natural persons. (*Angell & Am. on Corp.* 166, 167, 212 *to* 214, 239, 242, 243; *Salem Bank* v.

*Gloucester Bank*, 17 *Mass. R.* 28 *to* 30.) The board of managers in this case have the ordinary powers of boards of directors. A board of directors cannot delegate its power to make loans. Their duty and power is limited to a direct action upon each loan. (*Perry* v. *Millanden et al.* 3 *Louis. R.* 568; *Bank Commissioners* v. *Bank of Buffalo*, 6 *Paige*, 497.) This rule rests on the sound principle, that a trust, being a personal confidence, can not be delegated, and if it is, the acts of the delegate are void. (*Lewin on Trusts*, 262 *to* 266.) It thus appearing that the board of managers of the plaintiffs had not power to authorize the loans in controversy, it could not ratify them, for one can not ratify who has not power to authorize. (*Delafield* v. *State of Illinois*, 2 *Hill*, 175, *opinion of Bronson, J. and cases cited by him. See in this connection, Wyman* v. *Hallowell & Augusta Bank*, 14 *Mass. R.* 63.) Notice of the loan in question was not in fact given to the board of managers of the plaintiffs, nor has the board in fact ratified it.

*E. S. Van Winkle*, for defendants in error. The plaintiffs are not entitled to recover on the ground of the original deposit of the money with the defendants. That money was deposited in the usual manner. It was drawn out and loaned by Delafield, not as the cashier of the defendants, but as the agent of the plaintiffs. The cashier of the plaintiffs was duly informed of such withdrawal and loan. Their board of managers approved of it. They made no reclamation for years. The transaction was the plaintiffs', and the responsibility theirs. Delafield having so loaned the plaintiffs' money, with the knowledge and approbation of the plaintiffs, it is unimportant in law whether Delafield had or had not been previously authorized by the plaintiffs so to loan their money; for a confirmation retroacts, and is equivalent to an original authority. If follows necessarily that it was also unimportant whether the defendants had or had not notice that Delafield had no such authority.

If Delafield was authorized by the plaintiffs as their agent to make this loan, no responsibility rests on the defendants. If the

plaintiffs, without having authorized Delafield to make the loan, afterwards adopted it, the result is the same. (*Conn.* v. *Penn.* 1 *Pet. C. C. R.* 496; *Paley on Agency,* 4, 31, 115, 247; *Smith's Merc. Law,* 60.) Acquiescence even in a small matter will bind. (*Ward* v. *Evans, Ld. Raym.* 930; *Bank of U. S.* v. *Dandridge,* 12 *Wheat.* 64.) Confirmation of a part of the transaction is an affirmance of the whole. (*Story on Agency,* 245, § 250.) An account rendered and not objected to in a reasonable time is settled. The same rules apply to corporations. (12 *Wheat. ut supra; Ang. & Ames on Corp.* 2d ed. 246, and cases there cited; *Moss* v. *Rossie Lead Mining Co.* 5 *Hill,* 137. See also *Commercial Bank of Buffalo* v. *Kortright,* 22 *Wend.* 348, 360, 364; *Bank Commissioners* v. *The Bank of Buffalo,* 6 *Paige,* 497; *Angell & Ames on Corp.* 2d ed. 220, 222.)

RUGGLES, J. The plaintiffs were incorporated first by an act of the legislature of New-Jersey in January, 1812, for the purpose of building and maintaining a bridge across the Delaware river, with a capital of $50,000, and with a power of enlarging the same by new subscriptions, and to dispose at pleasure of any surplus moneys that might belong to them after the bridge should have been completed. Under this clause in their charter the plaintiffs carried on the business of banking. In December of the same year, they were incorporated by the legislature of Pennsylvania with the like powers. In the fall of 1834, this capital stock had been enlarged to $200,000.

In the spring of 1835, the company further enlarged their capital stock to $400,000 in the whole, by new subscriptions, a large portion of which was taken by persons residing in New-York. By a resolution of the board of managers adopted on the 21st of May, 1835, the installments on the stock held in this state were made payable at the Phenix Bank in New-York, and on all other certificates at the office of the company in Philadelphia. Accordingly in May and June, 1835, a large amount of the new subscriptions of the capital stock was paid in at the Phenix Bank and deposited there to the credit of the plaintiffs.

The amount exceeded $200,000. About $73,000 of the previous capital had been expended in the building of the bridge, and the residue of the entire capital, being about $137,000, was employed during the summer of 1835, and afterwards, at Lambertsville, N. J. and at Philadelphia, in the business of banking.

The object and purpose for which the increased capital was subscribed is not distinctly stated in the case. It could not have been for building or sustaining the bridge. The use to which it was subsequently applied sufficiently shows that it was subscribed to be employed in the business of banking. It does not appear, nor is it suggested that it was collected for any other or different purpose.

Samuel Morris was the president of the company from Nov. 1834, to November, 1839, and Timothy Davis was the cashier from 21st May, 1835, to March, 1837. John Delafield, (the cashier of the Phenix Bank,) was one of the managers of the plaintiffs' company from 16th November, 1834, to March, 1837. And Marcus Wilbur was also a manager from 1832 to 1842, excepting one year during which he was the president. Although the greater part of this large sum of money subscribed for the purpose of being employed in banking was paid in at the Phenix Bank during the month of May, 1835, and the residue in June following, the board of managers do not appear by the books or minutes of the company to have adopted any resolution for using or employing it for any purpose whatever until the 26th of November, 1835. In the mean time, unless in some way used and employed it was entirely unproductive of income. On the day last mentioned a resolution was passed by the managers in these words:

" Resolved, that J. Delafield, K. Taylor and M. Wilbur be and they are hereby appointed a committee in relation to *such affairs* of the company as to the promotion of its business and interest as may be laid before them in the city of New-York, with power in the premises."

On the 30th of Nov. 1836, about one year afterwards, another resolution was passed by the board of managers in these words:

"Resolved, that it is expedient to use the funds of the institution in a more active manner, by their investment in public stocks, or otherwise to loan or dispose of the same; and for that purpose a committee of three be appointed with full powers, which committee be and they are hereby authorized to check for and draw funds so to be appropriated."

"Resolved, that J. Delafield, J. D. Beers, and L. Curtis, constitute the committee named in the foregoing resolution."

If, therefore, we are to be guided only by the minutes of the proceedings of the managers in ascertaining what measures were taken by the company to render their capital productive, it would seem that they had entirely neglected it for nearly six months. That they then appointed a committee with absolute discretionary powers ; that they took no further action in relation to this subject until November, 1836, when by the last resolution they required a more active use of their capital, without any complaint or intimation that any part of it had been loaned without authority, or improperly disposed of.

In the mean time, and before the first committee was appointed, more than $164,000 of sums deposited, had been drawn and loaned by Delafield, one of the managers, and by Davis, the cashier, partly on notes, but chiefly on stock securities; of this sum, according to the account rendered, $146,000 and upwards was loaned before and on the 30th of June, 1835 ; and in this sum was included the loan of $34,500, which is now the subject of controversy. This last mentioned loan of $34,500 appears by the account to have been made on the 30th of June. On the following day, July 1, 1835, Delafield addressed to Davis, the plaintiffs' cashier, a letter in which he says, "Your favor of the 20th ult. was duly received. Enclosed you have a statement of the payments made for your account on the installment due on the 25th of June. You have credit for Mr. Taylor's notes as desired. The scrip is with me, though not discharged from your office. *I enclose a list of the loans made here with the securities attached, which will I trust prove satisfactory to you. If otherwise, state it, and I can call them in as they are on demand.*"

In a postscript he adds, "with the approbation of Mr. Morris [the president of the plaintiffs' company] and yourself, I will continue to loan the funds on hand. Let me know when your notes are ready for issue."

To this letter, Davis, the plaintiffs' cashier, on the following day, returned the following answer:

"Office of the New Hope Delaware Bridge Company, Philadelphia, July 2d, 1835.

J. Delafield, Esq. cashier,

Dear Sir. Yours of the first is at hand. I feel much pleased that you have been so mindful of our interests, and have invested so large an amount of our funds which is perfectly satisfactory, &c. I hope you will continue to loan as far as our account will permit. You do not credit us with the first installment of J. P. Cushman on 100 shares, say 1000 dollars, with that exception we agree. We shall have an emission of notes ready the first of next week.

(Signed,)   T. DAVIS, cashier.")

Davis, the cashier, distinctly admits in this letter the receipt of a list of the loans made at New-York from the plaintiffs' fund deposited there, and that list must have included the loan in question. Moreover, the first paper read in evidence on the part of the plaintiffs appears to be one of the accounts current received from time to time by Davis from Delafield. This paper brings the account between the parties down to the 30th of June. It answers the description of the paper mentioned in Delafield's letter. It contains a statement of the payments made on account of the plaintiffs' stock subscriptions, and of the loans made up to that date for their benefit, and of the securities therefor, *and it includes the loan in question.* No other paper of the kind could be found after search by Mr. St. John among the plaintiffs' papers. In that letter Delafield speaks of the papers as "a list of loans made here with securities attached." Davis testifies that the letter contained no certificates of Farmers' Loan stock. He does not say that it contained any of the securities, nor does he say that the account current now

in evidence was not the paper inclosed. Under these circumstances it seems to be safe to conclude that it was, or if not, that the statement of the loan in question was one of those contained in the list enclosed. I understand Delafield's letter to mean that he sent therewith a list of the loans with a list or statement of the securities attached, and not the securities themselves.

But the plaintiffs, not denying notice of the loan to their cashier, contend that notice to him is not notice to their board of managers, it being merely notice of an act done by Delafield under color of an authority which the cashier had no right to confer upon him. Let us examine this proposition with reference to its application to the present case. The plaintiffs' principal business was that of a bank. They had a capital of $330,000, intended for that business, To carry it on successfully it was necessary that the capital should be constantly and actively employed, and in order to conduct it with prudence and safety frequent meetings of the board of managers were indispensably necessary.

It was the duty of the managers at those meetings to inform themselves of the condition of the affairs of the company, and to take the same care of its funds and property as a prudent man would take of his own. The cashier was an officer selected and appointed by themselves, in whom they must be supposed to have entire confidence. An important part of his duty was to keep the managers informed of the state and condition of the company's funds, and to communicate to them every thing affecting the interests of the company, Without presuming a gross neglect of duty on the part of the managers in meeting and making the inquiries in relation to the funds in New-York, and a like neglect of duty on the part of their cashier in giving them information, it cannot be supposed that the managers remained ignorant of the loan now in controversy, or of the entire disposition which had been made of their funds in the defendants' bank during the month of June, 1835. The plaintiffs themselves can not call on a court or a jury to presume such a neglect of duty on their part. If however that neglect is to be

The New Hope and Delaware Bridge Co. *v.* The Phenix Bank.

regarded as proved, then another presumption arises equally fatal to the plaintiffs' case—the presumption that the managers intended to commit the disposition of their funds in New-York entirely to the discretion and control of the president and cashier who appear to have authorized the loan. It is much more rational to presume this, than to suppose they intended to abandon the interests of the stockholders by letting their capital lie idle and unemployed.

But if it is to be taken that the loan in question by Delafield on the 30th of June, 1835, was without authority, and that the managers were not chargeable with notice of the transaction immediately by reason of the notice to their cashier, they are clearly chargeable with notice from the time of their meeting on the 26th of November of the same year, when they acted upon their New-York business by appointing a committee thereon. The accounts current between the defendants and the plaintiffs showing the loans made in New-York, and this among others, and the correspondence between Delafield and Davis already mentioned, was in the hands of the cashier, and must be presumed on that occasion to have been produced by him and submitted to the board of managers. No other supposition can be indulged without looking upon the managers as ignorant of their duty or totally regardless of it. Mr. Wilbur testifies that he never saw the accounts until the early part of 1837, but it does not appear that he was present at the meetings of the managers in November, 1835, and in November, 1836, or at either of them. He says he was very little interested in the company, and remained a manager only because he was requested to do so. He knew nothing of the manner in which the funds in New-York were employed, and seems to have paid very little attention to the business of the company or to his duty as a manager. He never met with the committee appointed 26th November, 1835, in relation to the business in New-York, of which he was a member. Delafield informed him that the funds lodged in the Phenix Bank were productive and drawing a good interest, or that in substance, but how they were productive or

invested was not stated in his hearing, and it does not appear that he inquired.

In my opinion the plaintiffs were chargeable with notice that Delafield had made the loan in question as soon as that notice was received by their cashier, which was on the second of July, 1835. Every bank or banking company has its cashier, who is its agent for the purpose of writing and receiving letters on the subject of its ordinary business. A letter from the cashier (having no other agency or duty except what pertains to that office) on the business of his bank is a letter from his bank; a letter to the cashier relating to the business of his bank is a letter to his bank : and the bank is chargeable with knowledge of the contents of such letter.

Assuming then that Delafield, at the time of making the loan in question, had no authority to make it in behalf of the plaintiffs, the loan was beyond all doubt sanctioned and ratified by the omission of the plaintiffs afterwards to object to it. In his letter of the first of July he says, " I enclose a list of the loans made here which I trust will prove satisfactory to you ; *if otherwise, state it, and I can call them in, as they are on demand.*" The cashier answered that they were satisfactory, and hoped he would continue to loan. The managers at no time expressed their disapprobation of it ; and when they met on the 26th of November afterwards and appointed a committee with full powers to attend to their New-York affairs, Delafield, who made the loan, was the first named of the committee. In November, 1836, when the managers resolved to make more active use of their funds, he was again put upon a committee for that purpose ; and on neither of these occasions was any objection made or disapprobation expressed as to the loan. If the plaintiffs had not intended to approve of it, they should have said so without delay, so that the money might have been called in : not having done so, the defendants, if ever they were responsible to the plaintiffs for permitting their money to be drawn without authority, are discharged from that liability, by a ratification and adoption of this loan, and whether they had notice of the want

of original authority is totally immaterial. The defendants did not ask to have the case submitted to the jury on the question whether Delafield had originally authority to make the loan ; but on the question whether the plaintiffs subsequently acquiesced in and adopted it, although not authorized. The jury having found in their favor on that point, it is not material to inquire whether the judge was right in saying that the defendants were not chargeable with the knowledge possessed by Delafield as to his want of authority when the loan was made. The case did not depend on the question whether he had or had not originally that authority.

But the plaintiffs claimed to recover on another ground, viz. that the defendants received and had in their possession the Farmers' Loan stock upon which the $34,500 was borrowed, and which they have neither accounted for nor delivered to the plaintiffs.

The defendants denied that they at any time had the custody or possession of these certificates of stock, and insisted that in making the loan and in holding the securities Delafield was the plaintiffs' agent, and not the defendants'.

Delafield was at the same time the cashier of the defendants' bank, and the manager and agent of the plaintiffs. In keeping the account of the plaintiffs' deposits and in charging the sums drawn therefrom, he acted as the cashier and agent of the defendants. But in making the loans for the benefit of the plaintiffs, he acted by or under pretence and color of their authority, and not as the defendants' agent. The evidence leaves no doubt on this point. The defendants had no interest in the loan. In Delafield's correspondence he usually signed his name as cashier, and the letters from the plaintiffs were mostly addressed to him in that capacity. But most of this correspondence related to business in which Delafield acted partly as the cashier of the defendants and partly as the agent of the plaintiffs, and in determining the character in which he acted in any particular transaction, it is much safer to look to the nature of the business between the two institutions, and the relation he stood in to each of them respectively, than to the style in which

the correspondence was signed or addressed. On this point it is sufficient to say, that the true question between the parties was fairly submitted to the jury. The judgment below must be affirmed.

Judgment affirmed