MONCURE, J.
This was a suit brought by Swoope, executor of Leas, against Eidson, for the specific performance of a contract under seal for the sale of “the plantation on which said Leas resided in his lifetime, supposed to contain 260 acres, at 15 dollars per acre,” payable by installments. Performance was resisted on the ground of mistake as to a parcel of land containing fourteen acres, which it was alleged was embraced in the lines by which the plaintiff sold and defendant purchased; and was of such value, intrinsically and relatively to the balance of the tract, as to entitle the defendant, if he could not get the said parcel of land, to have a rescission of the contract, or at least such an abatement of the purchase money as would compensate him for the injury. After a survey was made and sundry depositions were taken in the *cause_, it came on for hearing; when the Circuit court, being of opinion that the contract was entered into under a mutual mistake of the boundaries of the land materially affecting and impairing the value of the land to the purchaser, yet not to such an extent as that it might not be compensated for by an abatement from .the purchase money, or as would justify the court in rescinding the contract or refusing specific performance upon any terms, decreed the execution of the contract upon the terms of compensating the defendant by an abatement from the purchase money for the injury resulting from the mistake; which the court from the testimony in the cause estimated and assessed at 500 dollars. From this decree the plaintiff appealed to this court. The case was submitted without argument at the last term, when the court being of opinion that the contract was not entered into under a mutual mistake, reversed the decree of the Circuit court, and decreed the execution of the contract without any abatement from the purchase money. But afterwards during the same term, the decree was set aside and the case reinstated on the docket for' argument. During the present term, the case has been fully argued and now comes up for reconsideration.
It is now well settled that a mutual mistake of the parties in a matter which is part of the essence of the contract and substance of the thing contracted for, will be corrected by a court of equity, and may be good ground for rescinding the contract or executing it on equitable terms of compensation, according to circumstances, even though the contract be in writing, and required to be so by the statute of frauds. 1 Story’s Eq. Jar., § 134, 144, 152, 142; 1 Munf. 330; 6 Id. 283; 3 Rand. 504; 6 Id. 552; 3 Leigh 113. There is no doubt but that if the contract in this case was in fact entered into under a mutual mistake of the boundaries of the land, the mistake was in a matter "which was part of the essence of the contract and substance of the thing contracted for, and the defendant was entitled to relief in some form or other, whether in the form of a rescission of the contract, or of compensation for the injury, is a question which need not and is not intended to be decided in this case. Supposing compensation to be the proper form of relief, the sum of 500 dollars would not seem from the evidence to be an extravagant assessment. In the view we take of this case, the only question which it will be necessary to decide is, whether in fact there was any such mistake?
To obtain relief on the ground of mistake in a written contract, and especially a contract coming within the purview of the statute of frauds, the mistake should be fully and clearly proved. Thompson v. Jackson, 3 Rand. 504. “In all such cases,” says Story, “if the mistake is clearly made out by proofs entirely satisfactory, equity will reform the contract, so as to make it conformable to the precise intent of the parties. But if the proofs are doubtful an *143 unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief, upon the ground that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy.” 1 Story’s Eq. Jur., § 152. And again he says, “Relief will be granted in cases of written instruments only where there is a plain mistake clearly made out by satisfactory proofs. It is true that this, in one sense, leaves the rule somewhat loose, as every court is still to say what is a plain mistake, and what are proper and satisfactory proofs.” — “But the qualification is most material, since it cannot fail to operate as a weighty caution upon all judges; and it forbids relief whenever the evidence is loose, equivocal, contradictory, or in its texture, open to doubt _ or opposing pre_ umptions.” Id., i 157. Let us now see whether the alleged mistake in this case is fully and clearly proved according to the requisition of the rule above stated.
Leas in his lifetime was seized of a tract of land in Augusta, containing 375 acres. Before his death he sold and conveyed 115 acres of the tract by metes and bounds to Engleman, leaving the residue of 260 acres unsold at his death. After his death, and in less than a year after the sale to Engleman, the sale was made by his executor Swoope to the defendant Eidson. In the contract of sale the property sold is described as “the plantation on which said Leas resided in his lifetime, supposed to contain 260 acres, ” which was precisely the quantity remaining of the original tract after deducting what had been sold to Engleman. The parcel of land in controversy containing fourteen acres, had in fact been embraced in the sale and conveyance to Engleman. But the defendant contended that it had been embraced in the sale to him. One of the dividing lines between the land sold to Engleman and the residue of the tract was designated in a plat filed in the case as the line A Q. The defendant contended that in the sale to him, the lines designated in the same plat as A Z, and Z X were represented as the true dividing lines, instead of the line A Q. The parcel of land in controversy is between these three lines and the outer line of the whole tract. The material part of the answer which sets up this ground of defence is in these words: "When the complainant as the executor of the said Leas, offered the farm for sale, and respondent thought of purchasing, the boundaries of the tract were of course subjects of enquiry and examination, and respondent was shown the marked lines A Z, Z X as the true lines in that direction; these lines complainant caused to be shown to all who enquired about the boundaries, and it was by these lines that complainant sold and respondent purchased.” If this statement in the answer had been sustained by the evidence, the defendant *would have maintained his defence, and been entitled to relief. His counsel in this court argued that the statement was directly responsive to the bill; and was therefore not only evidence, but was of such weight that it must be disproved by at least two witnesses, or one and corroborating circumstances. The portion of the bill to which this statement was supposed to be an answer is that in which the plaintiff, after setting out the contract, and the refusal of the defendant fully to perform his part of it, uses these words : "pretending, if your orator has correctly understood him, that he was entitled under said contract to a portion of another tract of land which had been sold and conveyed by said Leas in his lifetime to Engleman, who had, under said purchase, held possession of said land for many years before the death of said Leas.” These words of the bill were not intended as part of the statement of the plaintiff’s case, nor to charge that the defendant was in fact entitled according to his pretension ; nor was the defendant interrogated in any way in regard to such pretension. They were merely intended, as is very common in bills, to suggest the pretension on which the defendant sought to evade his obligation, and not to admit the truth of the pretension, nor to afford the defendant an opportunity to make it evidence against the plaintiff by affirming it. Therefore, even if the answer had been directly responsive to the allegation, if any, imported by these words of the bill, it would not have made the matter of the pretensions evidence against the plaintiff. What is that allegation? That the defendant pretended, &c. The only-direct response to that allegation which could be evidence against the plaintiff, is. that the defendant did or did not pretend;' not that he was or was not entitled under his contract to the land in controversy. But the answer does not respond to the allegation even in this latter form. It does not directly say that the *defendant is, entitled under his contract to the land in controversy; on the contrary, it in effect admits that Engleman was entitled to the-land under his prior deed. But it affirmatively states, that by certain lines the “complainant sold and respondent purchased. ’ ’ It behoved the defendant therefore to sustain this statement by full proof. Did he do it? I think not. There is not a particle of evidence to show that either the plaintiff or the defendant knew anything of' the disputed lines at the time of the sale;; on the contrary, it appears’ from the testimony of Wright, that the plaintiff knew nothing about them. There is not a particle of evidence to show that the plaintiff, or anybody else, ever showed these lines to the defendant, or gave him any information about them at or before the time the contract was entered into. The defendant made no attempt to prove his allegation, that he “was shown the marked lines A Z, Z X as the true lines in that direction, ’ ’ and that “it was by these lines that complainant sold and respondent purchased.” This was the very gist of his defence.
If the fact had been as stated, it would: *144 probably have been susceptible of easy proof. He does not pretend that the plaintiff had shown him these lines. He says “the boundaries of the tract were of course subjects of enquiry and examination, and he was shown the marked lines, &c., as the true lines in that direction.” By whom were they shown to him? He does not say, and does not prove. He says, “these lines complainant caused to be shown to all who enquired about the boundaries.” By whom did complainant so cause them to be shown? The defendant does not sa.y, and does not prove. On the contrary, the plaintiff proved by Engleman, who was naturally supposed to be the person referred to by the defendant, that he did not show these lines to the defendant before his purchase, and was never authorized by the plaintiff to *do so. The defendant seems to have taken a general view of the land, and was willing to buy it at 15 dollars per acre without reference to the precise locality of the lines. Brown proved that plaintiff asked defendant if he had seen the land and was satisfied, and defendant responded affirmatively. If defendant desired to know the boundaries before he purchased he could have had a survey, or at all events could have had them shown to him in such a way as to enable him to prove the fact beyond all controversy. If he considered the precise locality of the boundaries a matter of any importance, he.should, and doubtless would, have pursued that course. The whole evidence in this case strongly tends to prove that neither the plaintiff nor the defendant had any information about the lines in question, until the survey, was made preliminary to the execution of the deed, about twelve months after the sale, and after the defendant had received possession of the land; and that this controversy has arisen from what transpired at that survey in consequence of a mistake which had been made in laying off the land of Engleman. Eeas, It seems, intended to have 120 acres laid off to Engleman. The survey was accordingly made, and the lines marked; the lines A Z, Z X being two of them. But on calculating the quantity of land embraced in the lines, it was ascertained to be only 100 acres. The line A Q was then projected on paper by the surveyor, instead of the lines A Z, Z X, which increased the quantity to 115M acres, for which a deed was accordingly executed, but was not recorded until after Beas’ death, and indeed after the survey made in consequence of the sale to the defendant. The line A Q was never actually run or marked. The surveyor and Beas seem alone to have been acquainted with or noticed the fact that the unmarked line A Q had been substituted for the marked lines AZ, Z X. Engleman himself ^remained under the impression that the latter were the true lines, though the quantity of his purchase was of course known, and though the line A Q was described in his deed as the true line. When, therefore, the parties assembled on the ground to make the survey for the defendant, it was not strange that Engleman should have shown the lines A Z, Z X to the surveyor, and that all parties were agreed as to the fact that they were the true dividing lines. But as soon as the calculation of quantity was made, the mistake was discovered and rectified; and a deed was executed accordingly, and tendered by the plaintiff to the defendant. There is no doubt but that if the defendant before he made his purchase, had applied to Engleman to show him the dividing lines, he would have shown him the lines A Z, Z X, as he did to another person who had come as he supposed to buy the land. But the defendant did not so apply. The defendant’s counsel argued that it was the duty of the plaintiff as executor, and the interest of the defendant as purchaser, to inform themselves as to the boundaries of the land before the sale; that the natural way of obtaining the information was to make enquiries of the coterminous proprietors; that by making such enquiries they would have been informed that A Z, % X were boundary lines; and therefore it should be presumed that such information was received by each of them before the sale. The argument is plausible, but not sound. The premises are not admitted, and the conclusion is a non sequitur. The plaintiff might properly have agreed to sell, and the defendant to buy, the tract at 15 dollars per acre, without knowing the precise locality of all the boundaries. Or if it was their duty or interest first to obtain such information, the fact that they obtained it, if they did so, is susceptible of proof, and should have been proved, rather than be left to depend on mere presumption. The ^failure to produce such proof affords a stronger presumption against the defendant than the one relied on in his favor. But surely such a presumption as is relied on, if it be of any weight at all, cannot mount up to that full and clear proof which is required as the foundation of relief against a written contract on the ground of mistake.
I consider this case’ a plain one, and would not have felt justified in delivering so long an opinion upon it, but for the facts that I differ from the learned judge who pronounced the decree in the court below; that the decree entered at the last term was set aside, and the case reinstated for argument, at the instance of one of the judges of this court, because he entertained doubts as to the correctness of that decree; and that the case has accordingly been argued by counsel with much ingenuity during the present term. It only remains for me to say, that I am for re-entering the decree which was entered and set aside at the last term.
The other judges concurred in the opinion of Moncure, J.
Decree reversed.