## Wytheville.

### CHILHOWIE IRON CO. V. GARDINER.

August 7, 1884.

1. SPECIFIC PERFORMANCE.—A court of equity will not grant a decree for specific performance of a contract *ex debito justitiæ*. It is always a question of sound judicial discretion. The contract must be certain and definite in all its parts, and clearly proved. *S. V. R. R. Co.* v. *Lewis*, 76 Va. 833. It must also be reasonable and not grossly unequal; likewise, it must be mutual in its obligation.

2. IDEM—*Laches.*—If plaintiff has been unreasonably dilatory, or in default in performing, or has broken the contract on his part, specific performance will not be decreed.

3. IDEM—*Husband and Wife—Mutuality.*—A husband contracts to sell his wife's land, upon a bill in chancery, by the husband and wife against the purchaser, to compel specific performance of the agreement, specific performance will not be decreed, because specific performance could not be decreed at the suit of the purchaser, upon a bill against the husband and wife to compel *her* to convey her land; and so the remedies are not mutual. *Watts & als* v. *Kinney & Wife*, 3 Leigh, 98. *McCann* v. *Janes*, 1 Rob. R. 271

Appeal from decree of circuit court of Smyth county, rendered 25th April, 1882, in the cause of Thomas E. Gardiner against the Chilhowie Iron Company. The object of the suit was to compel specific performance of a parol contract made with said company by said Gardiner for the sale of a tract of two thousand acres of land, the property of Gardiner's wife, for $10,000, in the stock of the said company at par, there having been partial performance of the contract by the delivery of pos-

session of the land, and the exercise of ownership over it by the company in cutting timber, putting a tenant on it, &c. But when approached by the president of the company with a deed of conveyance of the land to be executed and acknowledged by Gardiner and wife, and an offer to issue the stock, issuance whereof was not to be made until title was conveyed, the vendor expressed an intention to delay delivering the deed until he could see how the company succeeded. He did delay the delivery of the deed several years and until the land had depreciated one-half and the company had ceased to exist, the stockholders however remaining solvent. Then he brought this suit, filing with his bill the deed of conveyance of the land, duly executed and acknowledged by him and his wife, and praying for specific execution of the contract.

The circuit court decreed in his favor, and the company obtained an appeal and writ of *supersedeas* from one of the judges of this court. Opinion more fully states the facts.

*W. W. Gordon,* for the appellant.

*J. H. Gilmore,* for the appellee.

The question of mutuality cannot arise in this case; for there is no want of it. There was no disability on the part of either of the contracting parties.

To the doctrine of *mutuality,* however, as contended for by the appellants, there are so many exceptions and limitations, and in modern times so narrow is its application, that it may with more propriety be said that mutuality, especially the mutuality in the right of the respective parties to the equitable remedy, is, instead of being a general rule governing cases of specific performance, an exception to that rule. See notes to case of *Benedict* v. *Lynch,* 7th Amer. Dec. 492, *et seq.,* and cases cited; *Clason* v. *Bailey,* 14 Johns. 488–9.

But if it be conceded, which it is not, that a contract by a

purchaser with a husband for his wife's lands is bad for want of mutuality, yet if the plaintiff has performed his part of the agreement, specific performance may be decreed, although the contract, so far as concerned performance by the plaintiff, was originally beyond the jurisdiction of the court; and if the husband and wife have, as in this case, conveyed and put the other party in possession, the objection that she could not have been compelled to perform her contract comes too late, and cannot be set up as a defence. *Seager* v. *Burns,* 4 Minn. 141; *Chamberlin* v. *Robertson,* 31 Iowa, 408; 1 Mad. Ch. 399, 401; *Farley* v. *Palmer & Wife,* 20 Ohio St. 223; 2d Chitty on Con. (11th Amer. ed. by Perkins), 1478–9, and note *o.*; Pomeroy on Spec. Per. § 295, p. 373.

Whatever may be said about this company's having suspended operations does not affect their liability upon their contract, and the company will not be heard saying in its defense against such liability that it has ceased operations. Code 1873, p. 543, chapter 56, § 31; Minor's Inst., vol. I, p. 583, 2d edition. Upon the whole the decree below should be affirmed.

LACY, J., delivered the opinion of the court:

In 1872, the appellant was chartered, and in the month of January, 1873, organized by the election of officers and adoption of by-laws.

The appellee being one of the subscribers, subscribed $10,000, and at the said meeting of the said company it was resolved, that the president be authorized to purchase the iron property of Thomas E. Gardiner, situated near Marion, at the price of $10,000, payable in the stock of the company at par, the stock to be issued as soon as the deed is made. It was then ordered that the treasurer call on the stockholders of the company who have not paid for their stock, for an installment of five per cent. on the same, and that stockholders be required to pay six per cent. interest from January 1st, 1873, on all sums subscribed

and not paid up, until paid, and that the treasurer make further calls, from time to time, as the necessities of the company may require, until the amount subscribed shall be fully paid.

The stockholders paid up the five per cent. required, except the appellee, who paid nothing.

The company commenced to make arrangements for the enterprises in view, by making and burning brick, &c., and prospecting for iron on the land of the appellee, and called upon the appellee for the deed to the land and offered to deliver the stock in question, but the appellee refused to part with title to the land, or to make the deed and to receive the $10,000 of stock of the company for the same, until he could determine by the progress of affairs, whether the company was to be a success, and whether the stock was to be worth par. And it appearing that the land belonged to the wife of the appellee, the company did not seek to compel the appellee to make the deed and receive the stock of the company, but abandoned the purchase and went out of business; first preparing a deed in due form, and tendering the same to appellee, to be executed by his wife and himself, which appellee refused to receive or to execute.

In February, 1878, more than five years after the order was made by the company authorizing the president to purchase this land, and two years after the company had practically ceased to exist, the appellee tendered the deed of himself and wife for this land and demanded $10,000 of the stock of the company of the president. The company having long since ceased to exist practically, and gone out of business, the president declined the offer, and the appellee brought this suit for the money, alleging that the stock not having been promptly given him he claimed money. The appellant demurred and answered according to the foregoing statement. The cause coming on to be finally heard, the bill having been amended, the court decreed specific performance of the contract set up in the bill, directed the appellant to accept the deed to the land, and deliver $10,000 of

stock of the company to the appellee. From this decree an appeal was allowed to this court.

The plaintiff in the circuit court having amended his bill, asks for specific performance of his contract to sell his land and to receive the stock of the company.

It may be remarked that specific performance cannot be considered as a matter of right in either party, but is a matter of discretion in the court. *St. John* v. *Benedict,* 6 John. Ch. R. Not, indeed, of arbitrary and capricious discretion, dependent upon the mere pleasure of the judge, but of that sound and reasonable discretion which governs itself, as far as it may, by general rules and principles, but which, at the same time, withholds or grants relief according to the circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties.

It is one of the principles of equity that it looks upon things agreed to be done and compellable to be done, as actually performed, and, consequently, as soon as a contract is made for the sale of an estate, equity considers the buyer as the owner of the land, and the seller as a trustee for him. On the other hand, it considers the seller as the owner of the money, and the buyer as the trustee for him. 6 John. 398, 403; Sug. 130.

All applications to the court to decree a specific performance must depend upon the circumstances of the case, governed by the established principles of the court. The contract must be clear and distinct; it must be fair and untainted by fraud, surprise, or mistake, and the plaintiff must come into court with clean hands. It must also be mutual (1 Mad. 334); and if not equal, at least, not grossly unequal. For though equity may not for inequality of price set aside a contract, yet the same inequality might induce a refusal to decree performance. It must be reasonable. If specific performance would work injustice, or be unreasonable, a party will be left to his action for damages. It is, indeed, generally essential that the party seeking a specific performance should not himself have been back-

ward; that he should not have held off until circumstances may have changed, or kept himself aloof, so as to enforce or abandon. the contract as events might prove most advantageous.   13 Ves. 225.

In the language of some of the judges, a party who seeks specific performance must show himself "*ready, desirous, prompt and eager.*"   Sug. 279.

Certain it is, that if there has been gross *laches* in the plaintiff, or if he has unreasonably delayed to perform his part of the agreement, or if he has broken it (3 H. & M. 436); or if he has been in default, and the defendant would sustain serious loss thereby in case of specific execution (4 Ran. 478); or if he cannot perform it, or if a performance, when he files his bill, would not put the other party in a situation he would have been in had there been a strict performance, he can have no decree in his favor, unless his failure or delay has proceeded from the fault or assent of the plaintiff.   4 John. 559.

In this case, as we have seen, there was no written contract between the parties.   The president of the company was authorized to buy, and the appellee here agreed to sell, and the price was agreed on.   The president of the company sought the appellee and requested and urged the consummation of the contract. He prepared and tendered a deed to the appellee ready for execution.   The price to be paid was not $10,000 in money, but $10,000 in stock of the company at par value.   The appellee refused to accept the stock, or to deliver the deed.

The land was not the property of the appellee, but of his wife, and the appellant was not able to compel specific performance by any proceeding against the husband, the appellee; and the appellee not being satisfied that it was to his interest to sel upon the agreed terms, refused to do so for five years.   The appellee had no claim upon the stock until the title was made to the land, and this was never done until about ten days before the institution of this suit.   Then he brought his suit for the money, not for the stock.   If the appellee was not bound to

convey, was the company bound to buy, whatever may have been the contract between them?

Can there be a contract without mutual obligation? Can there be an agreement between two parties which binds one of them absolutely and the other only at his pleasure?

Upon this ground no specific performance could properly have been decreed, since the want of mutuality in the contract should be considered a valid objection to the exercise of that jurisdiction. 1 Mad. Ch. Prac. 423–424.

Upon a bill in chancery by the husband and wife against the purchaser to compel specific execution of the agreement on the part of the husband to sell the wife's land, specific execution will not be decreed, because specific execution could not be decreed at the suit of the purchaser upon a bill against the husband and wife to compel her to convey her land, and so the remedies are not mutual. *Watts* v. *Kinney & Wife*, 3 Leigh, 293; *Clarke* v. *Reins*, 12 Gratt. 98.

The appellant, after seeking to complete the agreement on its part, gave it up altogether and went out of the business, and practically ceased to exist. After it had been out of existence for two years and more the appellee tenders a deed and demands in this suit not the specific execution of the contract, but that the company shall pay him $10,000 in money, and take his wife's land, which the company had no use whatever for, and had five years before tried to buy, not then for money but for stock, which had been refused. The circuit court caused the deed to be properly acknowledged, and the plaintiff to amend his bill and not ask for money, as he had done, but ask for stock; and then, ten years after the negotiations had ceased between the parties, decreed specific execution of the contract. The appellee had not only refused to accept the stock for his land, but he had neglected and failed to pay his stock up, or any part of it. Under the by-laws of the company he owed six per cent. on this until it was paid up in some way, and if he would not contribute the land did he not owe the money?

It is not difficult to discern through all the doings of this appellee that he did not desire stock of the company for his land. He wanted the money for it. His demand for the money in his first bill shows this, and his demand for the stock in his amended bill, now, since the company has gone out of business, is nothing but a demand for money in disguise. Ten thousand dollars worth of stock at par of a company which had gone out of existence as such, but whose corporators were solvent, could not be expected to remain in the form of stock very long.

If the appellee has any claim against the company as such, for the use of anything off of his land by his consent, it seems from this record that there is no difficulty whatever about a prompt settlement of it; but he is in no sense entitled to specific performance in this case, and the circuit court having so decreed erred; and the said decree of the circuit court must be reversed and annulled, and the bill of the plaintiff be dismissed.

DECREE REVERSED.