# Richmond.

## POTOMAC MAN'F'G CO. ET ALS. V. EVANS.

### APRIL 12th, 1888.

### Absent, Richardson, J.

1. CHANCERY PRACTICE—*Pleadings—Evidence—Decree—Case at bar.*—The decree must conform to the allegations of the bill. And whére bill sets out trust deed which stipulates that it shall be enforceable only after six months subsequent to demand made on default of payment, there can be no decree to enforce trust deed, though more than six months have elapsed after default and institution of suit, before decree was entered, the suit not being considered the demand stipulated for. *Welfley* v *Man. Co.,* 83 Va., 768.

2. TRUST DEED—*When enforceable—Case at bar.*—Trust deed provides that interest shall be paid when due, and on default *after demand,* for more than six months, on written demand of bondholders, trustee shall sell ; and that, in event of.such default continued for more than six months, the principal shall become due, provided majority of bondholders shall make written demand:

HELD :

1. All the provisions must be construed together.

2. Default can be predicated only upon refusal to pay on demand, and such default must continue more than six months before right to enforce accrues.

Appeal from decree of circuit court of city of Alexandria, rendered September 7th, 1887, in the suit wherein the appellees, R. D. Evans and others were complainants, and the appellants, the Potomac Manufacturing Company, the Virginia

Iron Ship-building Company, and Charles E. Moody, trustee, were defendants. Opinion states the case.

*S. F. Beach,* for the appellants.

*Charles E. Stuart,* for the appellees.

LEWIS, P., delivered the opinion of the court.

This suit was commenced in November, 1886, to enforce a deed of trust executed by the Potomac Manufacturing Company to secure the payment of certain coupon bonds and the coupons thereto attached of the said company. There was a demurrer to the bill, which raises the question whether or not, upon the allegations of the bill, the contingency has arisen upon which the holders of the aforesaid bonds and coupons are entitled to a sale of the property conveyed by the deed. The appellants, who were defendants in the court below, deny that it has. In other words, they contend that the suit was prematurely brought, and that the demurrer ought to have been sustained.

The bonds are dated November 1, 1882, and are payable ten years after date, "with interest thereon at the rate of six per centum per annum, semi-annually, in the city of Boston, on the first day of May and November in each year, upon the presentation and surrender of the coupons attached as they severally become due."

The deed of trust, a copy of which is exhibited with the bill, contains, among other things, the following clauses:

First. That the company will punctually pay its interest "as the same shall become due and payable *according to the terms of the said bonds,*" and will also pay the principal of the bonds at maturity.

Second. That if the company shall at any time *after demand*

made, make default, or refuse, neglect, or omit for any period *exceeding six months* to pay its interest when it becomes due, or shall refuse, neglect, or omit for a like period of six months after maturity to pay the principal of the bonds, then, and in either of such cases, the trustee shall sell, if requested in writing so to do by a majority in value of the bondholders. And then, as a part of the same clause, comes the following provision: "And it is further agreed and covenanted by and between the parties hereto, that in the event of any default in the payment of any instalment of interest which shall become due upon any of the bonds aforesaid, and in case such default shall continue for a period of six months after the same shall become due, the whole principal of all the said bonds then outstanding shall become due and payable: provided that the holders of a majority in value of said bonds then outstanding shall demand, and shall request him so to do by a written notice served upon said trustee."

The bill charges that, on the first of November, 1886, certain of the interest coupons, which became due on that day, and certain other coupons of the company, then past due, were duly presented for payment in the city of Boston, and that payment was refused, whereupon a majority in value of the bondholders served written notice upon the trustee, requiring him to sell, which he declined to do; and upon these facts it is insisted that a sale ought to be decreed.

It is clear from the provisions of the deed of trust, that the bondholders have no right to require a sale until after *default* by the company continued for at least six months. This is conceded. But what is meant by the term "default" in this connection? The appellee contends that it means a failure or omission to pay at the maturity of the coupons, whether payment is demanded or not. This contention is based upon the idea that the last provision of the second clause of the deed, above mentioned, is a separate and independent covenant, and

must be construed as such.    The argument is, that it is an independent covenant, not only because it declares that it is "*further agreed,*" etc., but because it omits the requirement of a demand, and thereby provides for a state of facts different from those before provided for.    In other words, the contention is, that, by declaring "that in the event of any default in the payment of any instalment of interest which shall become due," etc., without expressly requiring a previous demand of payment, the term "default" was here used in its technical sense, and was, therefore, intended to mean *a failure* to pay at maturity.

We do not concur in this view.    All the provisions of the deed must be construed together, as they were obviously intended to be; and in this light the case is free from difficulty. The construction contended for by the appellee, if sustained, would put it in the power of the bondholders, by simply withholding their coupons for six months after their maturity, to demand payment of the principal of the bonds at any time, which evidently was not the intention of the parties.    The bonds on their face recite that the interest is payable semi-annually in the city of Boston " upon *the presentation and surrender* of the coupons" as they severally become due; and this provision is also embodied in the deed of trust, which shows that until such presentation is made, and the payment is refused, the company is not in default.    Moreover, a demand is plainly required by the first part of the second clause of the deed above mentioned, which provides for a sale in the event of a default in the payment of interest, and no reason is perceived why it was not equally the intention of the parties to require a demand in the latter part of the same clause, already quoted, which gives to the bondholders the option to demand the payment of the principal of the bonds in the event of default in the payment of interest.    Manifestly, the word "default" was used in the same sense throughout the deed;

and this being so, default can be predicated of the company only upon its refusal to pay after demand of payment has been made "according to the terms of the bonds." This is too plain to admit of doubt.

The general rule, invoked by the appellee, that in an action on a coupon, payable at a particular place, it is not necessary to aver in the declaration a presentation at that place (*Walnut* v. *Wade,* 103 U. S., 683,) has no application. The present case must be determined upon its own facts, and in accordance with the intention of the parties as evidenced by their own contracts; and so viewing it, we are of opinion that when the suit was brought, the contingency had not arisen upon which a sale could be required; that is to say, the default of the company had not then continued for a period exceeding six months. The default occurred on the 1st of November, 1886, and the suit was commenced on the 22d of the same month.

The case in this respect differs from the case of *Shaw* v. *Bill,* 95 U. S., 10, which was a suit to foreclose a mortgage executed by a railroad company. In that case the insolvency of the company and its want of funds at the place where its bonds were payable, was alleged in the bill and admitted by demurrer; and the court held that in such a case no demand at the place is required, as the law does not exact the performance of a fruitless act. In the present case there are no such allegations in the bill, and, for aught there is alleged, the company may have been ready to pay its interest as the same became due and payable, prior to the 1st of November, 1886. The suit was therefore prematurely brought. *Swope* v. *Chambers,* 2 Gratt., 320.

The position of the appellee that the decree must be affirmed, because suit is a demand, and more than six months intervened between the institution of the suit and the decree of sale, is also untenable. A sufficient answer to this position is, that the decree must conform to the allegations of the bill. In *Mundy* v. *Vawter,* 3 Gratt., 494, it was decided that a decree in

equity must be restricted to the case made by the pleadings, no matter what the evidence may show; and no rule is better settled. *Crockett* v. *Lee*, 7 Wheat., 522; *Campbell* v. *Bowles*, 30 Gratt., 652; *Welfley* v. *Shenandoah Iron, &c. Co.*, 83 Va., 768; 1 Bart., Ch. Pr. p. 260.

It follows that the decree of the circuit court, overruling the demurrer to the bill, and ordering a sale of the property conveyed by the deed of trust, is erroneous, and must be reversed.

DECREE REVERSED.