# Richmond.

## SHENANDOAH VALLEY·R. R. CO. v. DUNLOP AND WIFE.

### NOVEMBER 7th, 1889.

1. DEEDS—*Reformation—Mistake.*—A deed will not be reformed to accord with a prior written contract where it appears that nothing was omitted by accident or mistake, but that the change was deliberately discussed and understandingly made, with only an unauthorized assurance by the grantee's agent that grantee would comply with the prior contract.

2. IDEM—*Parol evidence—Merger.*—In the absence of fraud, accident, or mistake, the terms of a deed cannot be varied by parol evidence of what occurred between the parties either before or during its execution, all prior contracts, written or oral, between them, being merged in the subsequent deed.

3. SPECIFIC PERFORMANCE—*Executory contracts—Mutuality.*— Contract to grant right of way over contiguous tracts of land of husband and wife, respectively, lacks mutuality, as it cannot be enforced against her, and hence not against the other party at their suit.

4. IDEM—*Deed—General relief.*—Where, however, husband and wife have granted by deed such right of way on certain stipulations therein set forth, they are entitled to specific performance thereof under their prayer for general relief.

5. APPELLATE PRACTICE.—Where no point was made in the pleading that the acknowledgment of the deed is void because taken by a notary who was the agent of the grantee, such point cannot be considered by this court, as it can only decree upon the case as made by the pleadings.

Appeal from decree of circuit court of Rockbridge county rendered July 18, 1884, and from decree of circuit court of Roanoke City rendered April 27, 1887, in a chancery suit wherein John T. Dunlop and Mary G., his wife, were complainants and the Shenandoah Valley railroad company was

defendant. The object of the suit was to reform a deed conveying the right of way to the defendant for its railway across the adjacent tracts of land of the said plaintiffs respectively, in order to conform it to the terms of a prior written agreement, on the ground of a mistake made by the draftsman of the deed. At the hearing the circuit court reformed the deed as prayed for in the bill, and the company appealed. Opinion states the case.

*Edmund Pendleton*, for the appellant.

*Glasgow & Glasgow*, for the appellees.

LEWIS, P., delivered the opinion of the court.

This is an appeal from two decrees, one rendered on the 18th of July, 1884, by the circuit court of Rockbridge county, the other on the 27th of April, 1886, by the circuit court of Roanoke city, in a suit in equity commenced in the first mentioned court, and afterwards removed to the latter.

It appears from the record that on the 25th of May, 1881, the male appellee, John T. Dunlop, entered into a written contract with the Shenandoah Valley railroad company, whereby he agreed, in consideration of $1,500 and two lines of seven strand barbed wire fence between certain mentioned stations on the line of the railroad, and four crossings between certain mentioned stations on the same road, " said crossings not to exceed a rise of one in twenty"—to grant to the railroad company a right of way through two contiguous tracts of land, lying in Rockbridge county, one owned by himself, and the other by his wife, which she had inherited from her deceased father. The contract was signed by John T. Dunlop alone, although at the bottom of it is the following: " The foregoing grant is subject to the acceptance of the Shenandoah Valley railroad company, *to be evidenced by its execution of this deed.*"

It appears, however, from an endorsement on the contract, that its acceptance was recommended by W. T. Shields, who was the agent of the railroad company in procuring rights of way, and that on the 26th of May, 1881, it was "accepted for U. L. Boyce, vice-president," by W. W. Coe, chief engineer of the company.

By deed dated the 9th of June, 1881, Dunlop and wife conveyed with general warranty of title to the railroad company, the strip or parcel of land mentioned in the contract, and thereupon the company took, and has since held possession of the land. But the stipulation in the deed with respect to fencing and crossings, differs materially from that contained in the contract, the provisions in the former being as follows: "The said Shenandoah Valley railroad company *to provide all proper wagon-ways across the tracks on said grantors' lands*, not to exceed a rise of one in twenty, to keep the same in good repair, and to build a seven-strand barbed wire fence on each side of the track as it runs through the lands of said grantors." And it is this that gives rise to the present controversy.

The bill sets forth, substantially, the foregoing facts, and prays for the specific performance of the contract of the 25th of May, 1881. It also sets forth what it is alleged was the understanding between the parties as to the nature of the crossings to be constructed at the time the contract was entered into. The bill was filed by Dunlop and wife jointly, and copies of the contract and deed are exhibited therewith. It is not alleged, however, that possession was taken by the defendant corporation under the contract, but the allegation, in substance, is that possession was taken, and that the railroad was constructed through the complainants' lands, under *the deed*.

The company demurred to the bill and also answered, but the demurrer was overruled by the decree first above mentioned. By that decree it was also adjudged, in the language of the deed above quoted, that the defendant corporation is bound to provide all proper wagon-ways across the track on the plain-

tiff's lands, not to exceed a rise of one in twenty, and to keep the same in good repair, etc.

It will thus be seen that the decree not only overruled the demurrer to the bill, but went on to adjudicate the principles of the cause, by holding, in effect, that the complainants were entitled to no other rights in respect to the crossings, than such as were stipulated for in *the deed*, which, in effect, was also a decision that the complainants, the appellees here, are not entitle to a specific performance of the contract of the 25th of May, 1881.

In the latter view we concur, and so thinking, we are of opinion that the demurrer to the bill ought to have been sustained, since the sole object of the bill was the enforcement of that contract.

The bill is demurrable for several reasons. In the first place, the contract, if it bound the company at all, is *functus officio*, it having been merged in the deed; nor was it ever capable of being enforced in its entirety, because, so far as it related to the sale of Mrs. Dunlop's land, it was not mutual. It was not signed by her, and even if it had been, the essential element of mutuality would still have been wanting, since she, being a *feme covert*, could not have been compelled to specifically execute it.

It is a fundamental rule in equity that a contract, to be specifically enforced, must, in general, be mutual in its obligation and in its remedy, and it must be mutual *ab initio*. If, therefore, from the personal incapacity of one of the parties, or other cause, the contract, when concluded, is not enforceable against such party, no subsequent act or event can render it capable of enforcement against either party. In other words, it must be enforceable originally, or not at all.

It is, accordingly, well settled, certainly in this court, that, independently of any statute on the subject, an executed contract of the husband, or of the husband and wife, for the sale

of the wife's lands, is not one of which specific performance will be decreed, because, as to the wife, the contract is void, and as to the husband, it cannot be enforced, because to coerce him would operate morally as a constraint upon the wife, and since the contract is not enforceable against them, so neither can it be enforced by them. *Watts* v. *Kinney,* 3 Leigh, 272; *Clarke* v. *Reins,* 12 Gratt., 98; *Chilhowie Iron Co.* v. *Gardiner,* 79 Va., 305; *Cheatham* v. *Cheatham's ex'ors,* 81 *Id.,* 395; *Luse* v. *Deitz,* 46 Iowa, 205; Fry, Spec. Perf., sec. 286; 2 Min. Inst., 785.

As to the effect of the wife's contracts touching her *separate estate,* we say nothing, for no such question arises in the present case.

It is unnecessary, however, to dwell upon the action of the circuit court in overruling the demurrer to the original bill, for, after the demurrer was overruled, the complainants filed an amended bill, which presents the principal question in the case. In the amended bill it was charged that the deed was executed on the strength of the assurance of the railroad company by its agent that the terms and stipulations of the preliminary written contract would remain in full force; and the prayer of the bill was that the deed be reformed, so as to make it conform to the contract, or that it be cancelled. The bill also contained a prayer for general relief.

There was no demurrer to the amended bill, but the company denied its material allegations, and depositions were taken, after which the decree of the 27th of April, 1887, above mentioned, was rendered. By that decree, reformation of the deed was decreed on the ground, as set forth in the decree, that by accident or mistake, the draftsman of the deed had failed to incorporate into it the terms and conditions of the contract.

This decree is consistent neither with the pleadings nor the proofs. Indeed, not only is there no proof that anything was left out of the deed by accident or mistake, but, on the con-

trary, it is clearly proved that the change in phraseology was intentionally and deliberately made, and that it was the subject of discussion between the parties when the deed was executed.

The witness, Shields, who was the draftsman of the deed, and also the agent of the company in obtaining rights of way through Rockbridge county, testifies that when he presented the deed to Dunlop and wife to be executed, the former called attention to the fact that the stipulations of the deed were not the same as those contained in the contract, to which the witness replied that it was "not customary to insert unusual conditions in such deeds." He does say, it is true, that he gave Dunlop to understand, as far as he could speak for the company, that it would comply with the essential requirements of its contract; but he did not profess to be authorized to bind the company beyond the stipulations in the deed, nor does it appear that he was authorized to do so. And the fact is apparent from the record, that the deed was executed with a full and clear understanding of its contents, and with no other outside influence or assurance than the statement of the witness, Shields, above mentioned, which is all the evidence on the subject, the deposition of Dunlop having been rightly excluded, on the ground of his wife's interest in the suit.

This being so, there was, obviously, no mistake or misapprehension on the part of the complainants, and consequently no ground for the reformation of the deed. The authorities all agree that equity has jurisdiction to reform written instruments in two well defined classes of cases only, viz: (1) Where there has been an innocent omission or insertion of a material stipulation, contrary to the intention of both parties, and under a mutual mistake; and (2) where there has been a mistake of one party accompanied by fraud or other inequitable conduct of the remaining parties. But so great and obvious is the danger of permitting the solemn engagements of parties, when reduced to writing, to be varied by parol evidence, that in no case will relief be granted except where there is *a plain*

*mistake, clearly made out by satisfactory and unquestionable proofs.* According to some of the cases, there must be a certainty of the error. At all events, the party alleging the mistake, must show by evidence, which leaves no reasonable doubt upon the mind of the court, not only exactly in what the mistake, if any, consists, but the correction that should be made. And where, as in the present case, such evidence is not produced, relief should be unhesitatingly denied. A rule less rigid would be fraught with infinite mischief, since it would be destructive to the certainty and safety of written contracts.

Of course the danger in reforming a written contract is not as great where the alleged mistake is made out by a preliminary written instrument or agreement, as where parol evidence only is admitted. But even in such a case, said the court in *Carter* v. *McAstor*, 28 Gratt., 356, it must be made plainly to appear that the parties intended in their final instrument, merely to carry into effect the arrangement set forth in the prior agreement. "The very circumstance," it was added, "that the final instrument differs from the preliminary contract, affords of itself a presumption of an intentional change of purpose or agreement, unless there is some recital in it, or some other attendant circumstance, which demonstrates that it was merely in pursuance of the original contract." See also, *Leas' Ex'or* v. *Eidson*, 9 Gratt., 277; *Manzy* v. *Sellars*, 26 *Id.*, 641; *Fudge* v. *Payne*, *ante*, p. 303; *Hearne* v. *Marine Ins. Co.*, 20 Wall., 488; *Lyman* v. *United Ins. Co.*, 2 Johns. Ch., 630; 2 Pom. Eq., sec. 859.

Nor is there any ground for the cancillation of the deed. The charge of fraud (if, indeed, it can be treated as a charge of fraud at all,) is not only extremely vague, but is wholly unsupported by proof of any kind; and as to the alleged verbal agreement contemporaneous with the execution of the deed, that the terms of the preliminary contract should remain in full force, it is enough to say that nothing is better settled, either at law or in equity, than that, in the absence of fraud, accident, or mistake, the deed must be conclusively presumed to contain

*the whole* agreement between the parties.    In other words, the terms of the deed cannot be varied by parol evidence, of what occurred between the parties previously thereto or contemporaneously therewith.    *Towner* v. *Lucas*, 13 Gratt., 705; *Barnett* v. *Barnett*, 83 Va., 504; *Tait* v. *Central Lunatic Asylum*, 84 *Id.*, 271.

As to the point made in the argument for the appellees, that the acknowledgment of the deed is void, because taken by a notary (Shields) who was the agent of the grantee, it need only be said that no such point was made in the pleadings or in the court below, and cannot, therefore, be considered here, since we can only decree upon the case as made by the pleadings. *Mundy* v. *Vawter*, 3 Gratt., 518; *Potomac Manf'g Co.* v. *Evans*, 84 Va., 717.

The appellees, however, are entitled to a decree in this suit for the specific performance of the stipulation in the deed above quoted, and this they are entitled to under the prayer of the amended bill for general relief.    *Parrill* v. *McKinley*, 9 Gratt., 1; *Belton* v. *Apperson*, 26 *Id.*, 207; Story Eq. Pl., sec. 40.

The decree reforming the deed, must therefore, be reversed and annulled, and the cause will be remanded to the circuit court of Roanoke city, for such further proceedings to be had therein as may be necessary in order to a final decree in conformity with this opinion.

DECREE REVERSED.