GEORGE J. O'CONNOR,

*vs.*

PHILIP CAPLAN, JOSEPH M. DONOWAY, Sheriff, and
MAYER MARGOLIN.

*Sussex, Jan.* 20, 1919.

If an execution on a judgment issues before the debt embraced in the judgment becomes due, it is not void, but voidable merely, and cannot be attacked collaterally by another creditor of the defendant in the execution.

The burden of proof is upon a creditor, seeking injunctive relief against execution on a judgment of another creditor, to show that such judgment is invalid for fraud, or that the bond on which the judgment issued lacks consideration.

A bond, with warrant of attorney to confess judgment, to secure the obligee for moneys that he should advance to the obligor with which to purchase scrap iron for the obligee, *held* to be valid, in the absence of any showing as to bad faith.

Where a bond, with warrant of attorney to confess judgment, does not show that it was given to secure future advances to the obligee, that it was so given may be shown by evidence aliunde.

A creditor, who has obtained a judgment by confession on a bond for advances of money, and caused an execution under a fi. fa. on such judgment to be issued, is entitled to enforce his lien to the extent of all advances made before the attachment suit of another creditor was begun, assuming that his lien is prior to that of such attachment creditor.

Bill and Supplemental Bill for an Injunction Against Proceeding on an Execution. Philip Caplan, one of the defendants, on July 27, 1918, obtained a judgment by confession against one Meyer Margolin on a bond dated May 18, 1918, for $1,000, due and payable May 18, 1919, with interest, and under a fi. fa. on said judgment, issued August 9, 1918, personal property of the defendant, Margolin, was levied on and advertised for sale by the sheriff on September 10, 1918. On August 9, 1918, the complainant, O'Connor, brought before a justice of the peace an attachment suit against Margolin as an absconding debtor, the date of the hearing thereon being September 14, 1918, which would have been after the sale. It was alleged that the judgment of Caplan against Margolin was without consideration, fraudulent and void, and that the judgment note on which the judgment was entered was obtained from Margolin by fraud and collusion, and is null and void. The character of the fraud, or the facts constituting it, are not alleged in the bill.

The bill prays for injunctive relief against the sale. A restraining order was granted to stay the sale, security being given, and a rule for preliminary injunction issued.

Afterwards the bill was amended by allegations that the bond on which the judgment was entered was signed by Caplan, the obligee, as well as the obligor, Margolin; that the debt will not be due until May 18, 1919, and, therefore, the execution issued on the judgment in July, 1918, could not issue, meaning should not have been issued; and that the complainant has recovered a judgment against Margolin for $187.17.

The hearing, then, is on the rule for a preliminary injunction on bill, supplemental bill and affidavits submitted.

*Charles L. Moore* and *Robert G. Houston*, for complainant.

*Charles W. Cullen* and *Howard J. Cooke*, for defendants.

The Chancellor. The complainant is not entitled to injunctive relief to restrain the sale under the execution issued on

the judgment of the defendant, Caplan, against Margolin based on the fact that the debt was not due. An execution cannot properly be issued until the judgment is due and payable. But, as Judge Woolley said in 2 *Woolley on Delaware Practice*, § 954, *p.* 616, if execution be issued before the debt secured by the judgment becomes due and payable, the execution can be avoided by the defendant. "If the defendant sees proper not to resist the execution, the court will permit the execution to stand, and will not allow other creditors to attack it collaterally." For this he cites an unnamed and unreported case heard in 1890 in New Castle County. The learned author might also have cited *State, use of Roe, v. Platt*, 5 *Har.* 429. In that case there was a judgment payable in installments and execution was issued after one installment was due and before the others were payable. It was claimed that the execution was void, but the Court held otherwise. On the back of the writ was a statement of the several amounts of the installments and, the dates when they fell due, and as stated by the Court in the charge to the jury, this was regarded as instructions from the plaintiff to the Sheriff as to the amount due. At an earlier stage of the case the Court in considering the same matter said:

"The distinction is between void and voidable process—between such as is merely irregular and such as is absolutely void. Process issued on a judgment payable by installments, after any of them, but before all of them, are due, and commanding the Sheriff to levy the whole debt, would be merely irregular, and it would not be competent for any one, collaterally to question it, much less the Sheriff, who executes it; but it is even doubtful whether the writ is irregular."

The effect of this is to support the view of Judge Woolley, and is a declaration that an execution on a judgment not due is not void, and cannot be attacked collaterally by another creditor of the defendant in the execution. In the case of *Otwell v. Messick*, 4 *Houst.* 542, the defendant in the judgment took a *certiorari* on the ground that the execution was issued before the debt was due, and the Court simply set aside the execution.

In the present case there is no objection to the premature execution made by the defendant in the judgment. It is claimed that the judgment in question was invalid on account of fraud;

but there was no allegation as to the matters constituting the fraud, and no evidence was offered to show it, or to·controvert the presumption as to the existence of a consideration for the bond on which the judgment was entered. On these points the complainant has the burden of proof.

By the affidavit of Caplan, the obligee in the bond, it appears that it was given on May 18, 1918, to secure him for moneys which he should advance to the·obligor, Margolin, to purchase for the obligee scrap iron, and that between May 26 and August 5 several sums stated in the affidavit were so paid to Margolin aggregating $1,166.20; but that the obligee had not received iron or repayment of the advances. Whether the iron levied on is that so purchased for the obligee does not appear. It does appear that at the time judgment was entered on the bond, July 27, 1918, $1,066.20 had been so advanced, and that at the time the attachment suit of·the complainant against Margolin was begun, July 9, the advances amounted to $666.20, and that all of the advances had been made before the complainant had recovered a judgment in his suit.

A mortgage to secure future ·advances is valid if made in good faith. If it does not appear by the mortgage that it was for advances to be made, it may be so shown by evidence *aliunde*. There appears to be no reason why future advances cannot be secured by a bond with warrant of attorney to confess judgment, as well as by mortgage. There is nothing to impeach the bona fides of the transaction in this case. No allegation by reply affidavit was made as to any injury to the complainant by the transaction between the obligor and obligee, nor that the complainant was misled into giving credit to Margolin by reason of the transaction. It does appear, however, that the debt of Margolin to the complainant probably existed as early as January 10, 1917, for the judgment which the complainant recovered against Margolin was for money had and received, with interest from January 10, 1917.

It does not appear whether Caplan or O'Connor first acquired a lien on the goods, for though it appears that the execution of Caplan was issued on the same day that the attachment in the suit of O'Connor, the complainant, against Margolin was made,

viz., on August 9, 1918, it does appear at what time the writ was delivered to the sheriff, from which time it bound the goods of the defendant in the execution actually levied on within 60 days.

Assuming, however, which is probably the case for otherwise the complainant would not need relief here, that the lien of Caplan's execution was prior to that of O'Connor, it seems at this time to be clear that Caplan is entitled to enforce his lien at least to the extent of all advances aggregating $666.20 made before O'Connor's attachment suit was begun. Whether Caplan has a lien for the later advances may be unimportant, for that will depend on the price at which the property is sold. It was appraised at $282.00 in the attachment suit of the complainant.

I propose, therefore, to dissolve the restraining order and deny the motion for a preliminary injunction, which will enable the defendant, Caplan, to sell by execution the property levied on, and in case it is important to do so, may by supplemental order retain control of the proceeds of sale in excess of the amount necessary to pay him the above mentioned advances aggregating $666.20, with interest and costs.

An order will be entered accordingly.