THE HOTEL HENLOPEN INC., a Corporation of the State of Delaware, v. BALTIMORE TRUST COMPANY, a Corporation of the State of Delaware, Assignee of Lee W. Insley and Dorothy Lee Insley, his wife, and James Sidney Banks and Florence E. Banks, his wife.

(*September* 24, 1947.)

RICHARDS, C. J., sitting.

*Daniel J. Layton, Sr.*, for petitioner.

*Caleb M. Wright* for respondent.

Superior Court for Sussex County, Rule No. 1 to June Term, 1947.

RICHARDS, C. J.:

The Hotel Henlopen, Inc., a corporation of the State of Delaware, which operates the Hotel Henlopen at Rehoboth Beach, Delaware, on June 24, 1946 executed its certain bond with warrant of attorney for the confession of judgment, for the sum of $114,500, payable to Lee W. Insley and Dorothy W. Insley, his wife, and James Sidney Banks and Florence E. Banks, his wife, on June 24, 1956.

Subsequently said bond and warrant of attorney were assigned to Baltimore Trust Company, a corporation of the State of Delaware, which caused judgment to be entered thereon in this Court same being No. 138 to June Term 1947; and further caused an execution to be issued on said judgment on July 29, 1947, same being Fi Fa No. 12 October Term 1947; and further caused, by virtue of said writ of execution, a levy to be made on July 30, 1947 upon the personal property of the Hotel Henlopen Inc., used in connection with the operation of the said Hotel Henlopen.

Under the terms of said bond the obligor was bound to pay the sum of $4500, bearing no interest, on January 1, 1947; and further bound to pay the sum of $12,000 at the expiration of each year from and after the date of said bond, namely, June 24, 1946, until the remainder of the principal sum be fully paid, with interest at the rate of five percent, payable semi-annually. The final payment of principal, if not sooner paid, to be due and payable on June 24, 1956.

The said bond also provided that the obligor should keep and maintain at all times until the discharge of the obligation thereof, policies of fire and windstorm insurance,

pay all taxes and municipal claims against the premises covered by the mortgage which said bond accompanied, and produce receipts for such payments within ninety days thereafter.

It was also expressly agreed by the terms of said bond, that if default should be made in the payment of any installment of principal and interest for the space of ninety days after the same shall fall due, or in the prompt and punctual maintenance of said fire and windstorm insurance, or in the payment of taxes and the production of tax receipts on or before ninety days after they shall have been paid, or in the payment of any municipal claims which may be assessed against the premises and the production of such receipt on or before ninety days after the payment thereof then and in that case the whole unpaid balance of the principal debt, with interest accrued thereon, shall at the option of the obligees become due and payable.

By the warrant of attorney constituting a part of said bond, the obligor authorized any clerk, prothonotary or attorney of any court of record in America or elsewhere to appear for it and confess judgment thereupon for the sum of $114,500.00, besides interest, costs of suit and counsel fees, with stay of execution until the day of payment.

The sum of $4500 due on January 1, 1947, was paid, but the sum of $11,000 due on June 24, 1947, was not paid on that date and was not paid at the time said execution was issued.

The amount which the Sheriff was directed to collect on the execution issued on July 29, 1947, aforesaid, was $11,000 with interest from December 24, 1946 to June 24, 1947, at five percent, and five percent counsel fees.

The Hotel Henlopen Inc., presented its petition to this Court averring that the said execution which the Baltimore

Trust Company caused to be issued on its aforesaid judgment on July 29, 1947, upon which the Sheriff, on July 30, 1947, levied upon its personal property used in connection with the operation of The Hotel Henlopen aforesaid, was prematurely and unlawfully issued, because 90 days had not intervened between June 24, 1947, the date upon which the first installment of $11,000 was due, and July 29, 1947, the date the execution was issued and that the levy made thereon was illegal and void.

In pursuance thereof a rule was issued out of this Court commanding The Baltimore Trust Company to appear in this Court and show cause why said execution and levy made thereunder should not be set aside and declared null and void, and the personal property of petitioner released from the lien of the levy.

 There is no doubt that execution cannot issue until the obligation sought to be enforced is due and payable. 33 *C. J. S., Executions*, § 66, page 204, 2 *Woolley Sec.* 954; *Otwell v. Messick*, 4 *Houst.* 542 (9 *Del.*); *O'Connor v. Caplan*, 12 *Del. Ch.* 72, 106 *A.* 48. The obligation under consideration provides for the entry of judgment for $114,500 payable on June 24, 1956, with stay of execution until the day of payment; but it also provides for the payment of annual installments of $11,000 on the expiration of each year after date of its execution which was June 24, 1946. The installment of $11,000 due on June 24, 1947, was not paid on that date and still remaining unpaid July 29, 1947, the execution which is the subject of this litigation was issued. Can there be any doubt that the bond provides for the payment of $11,000 on June 24, 1947? Of course it also provides that if default shall be made in the payment of said sum of $11,000 on June 24, 1947, or any other installment of principal or interest for the space of ninety days after the same shall fall due, then and in such case the

whole unpaid balance of this principal debt of $114,500 shall become due and payable immediately with accrued interest thereon, at the option of the obligee. This is what is known as an acceleration clause and is found in most bonds which are prepared today. It advances the time when the unpaid balance of the principal becomes due and payable. Can it be said, however, it extends the time for the payment of said installment of $11,000 due on June 24, 1947? If it does it takes away from the security which the obligee has for its loan by requiring it to stand by for ninety days while other creditors of the obligor issue execution and levy upon its personal property. This does not seem fair to the obligee. It must not be forgotten that when the Baltimore Trust Company issued its execution on July 29, 1947, it was not seeking to collect the whole principal sum of $110,000 remaining due on said bond, but only $11,000 which was due and payable on June 24, 1947, and accrued interest. Said sum of $110,000 was not payable at that time but the sum of $11,000 was payable, it became payable on June 24, 1947, and if the obligor fails to pay it within ninety days of that time then said principal sum of $110,000 remaining unpaid will become due and payable at the option of the obligee.

The argument was made that the acceleration clause was for the benefit of the obligor and that the provision was a very proper one in this case as it related to the operating season of a summer hotel. It is just as reasonable to say that it is for the benefit of the obligee, because when a certain installment of principal is not paid on the day provided for in the obligation, the obligee may become convinced that the obligor is not going to be able to meet the subsequent installments and therefore should not be required to wait until a later date, when the property may have deteriorated before attempting to collect the whole

principal debt. The ninety days default provision in the bond not only applies to the payment of installments of principal and interest, but to the maintenance of fire and windstorm insurance, to the payment of taxes and the production of tax receipts and to the payment of municipal claims. which may be assessed against the property of the obligor and the production of receipts therefor. Thus it appears that the parties to the obligation intended that upon the happening of any contingency which jeopardized the security of the obligee, the balance of the whole principal debt should become due and payable.

The installment of $11,000 on the principal, not having been paid June 24, 1947, the Baltimore Trust Company had a right to issue its execution for the purpose of collecting said installment and levy upon the personal property of defendant named therein. *Roe v. Platt,* 5 *Harr.* 429 (5 *Del.*) ; *Piatt v. Piatt,* 9 *Ohio* 37; 23 *C. J.,* § 136, page 374; 33 *C. J. S., Executions,* § 66.

In the case of *Otwell v. Messick, supra,* judgment was entered on a note before it was payable and execution issued on said judgment before it became payable. The Court set aside said execution on the ground that said judgment was not due and payable at the time said execution was issued. In the case of *O'Connor v. Caplan et al.,* supra, a judgment was obtained on May 18, 1918 payable on May 18, 1919 upon which execution was issued on August 9, 1918 and a levy made upon the personal property of the defendant. The Chancellor held an execution could not be issued until the judgment was due and payable. In neither of these cases was the judgment payable by installments and the question of whether an execution can be issued to collect an installment which is due and payable was not involved.

In the case of *Overton v. Tyler,* 3 *Pa.* 346, 45 *Am. Dec.* 645, the real question in this case was whether an obligation

containing terms of negotiability, together with a power to confess judgment, releasing all errors and waiving stay of execution, was a promissory note entitled to days of grace. The Court held that it was not a negotiable instrument and that execution could not be issued on the judgment entered thereon until it was due and payable.

In the case of *Hartsuff v. Hall et al.*, 58 *Neb.* 417, 78 *N. W.* 716, a negotiable note for $12,000 was secured by a mortgage for a like amount. The interest on said obligation was payable semi-annually according to the tenor of ten interest notes. The original note contains a stipulation that if default be made in the payment of any interest note or any portion thereof for the space of ten days after the same becomes due and payable, the principal and interest notes shall become due and payable at the option of the holder thereof. The interest note payable May 1, 1895, was not paid on that date, and suit was brought on the original debt on May 13, 1895. The Court held that the interest note, being a negotiable instrument, was entitled to three days of grace and therefore was not due on May 1, 1895, and consequently suit could not be brought on the original obligation until ten days after that time.

In the case of *Potomac Manufacturing Company, et al. v. Evans*, 84 *Va.* 717, 6 *S. E.* 2, 3, suit was commenced to foreclose a certain deed of trust executed by the Potomac Manufacturing Company to secure the payment of certain coupon bonds, and the coupons attached thereto issued by said Company. The bonds were dated November 1, 1882, payable ten years after date with interest at the rate of 6% semi-annually, in the City of Boston, on the first day of May and November in each year, upon the presentation and surrender of the coupons attached thereto as they became due. The deed of trust provided, inter alia, that in the event of any default in the payment of any installment

of interest due upon any of the bonds, and in case such default shall continue for a period of six months after the same shall become due, the whole principal of all the said bonds then outstanding shall become due and payable, provided that the holder of a majority in value of the said bonds then outstanding shall demand the same by written notice served upon the Trustee. The Court held that it was clear from the deed of trust that the bondholders had no right to require a sale until after the default by the Company continued for at least six months. That it was the intention of the parties to require a demand in the event of default in the payment of interest, and then used this language "Manifestly, the word 'default' was used in the same sense throughout the deed; and, this being so, default can be predicated of the company only upon its refusal to pay after demand of payment has been made 'according to the terms of the bonds.'"

In the case of *Harrold et al. v. Warren, Tex. Civ. App.*, 46 *S. W.* 657, 658, suit was filed March 25, 1897, by Warren, the Appellee, against East and Harrold, the appellants, upon a note and to foreclose a mortgage given to secure the same. Said note was dated December 16, 1895, for $1500 payable thirty-six months after date, with interest payable semi-annually from the date of the note until it was paid. It was not due at the time suit was brought but two semi-annual installments of interest were past due. There was no provision in the mortgage maturing the principal, if the interest installments were not paid. The contention was made that the interest which had already accrued was as much a part of the debt as the principal and upon default being made in the payment of such interest when due, the appellee had the right, by remitting the unearned interest, to sue upon, and to recover judgment for, his principal debt, and for all accrued interest thereon, and to have the property sold to satisfy the judgment.

The Court held that the lien was evidenced by a deed of trust which contained the following clause; "Upon payment of which said promissory note, according to its face and tenor, being well and truly made, then, in such case, this conveyance is to become null and void, and of no further force and effect, and shall be released at the cost and expense of the said grantors. But in case of the failure or default in the payment of said promissory note, together with the interest thereon accrued, according to its terms and face, at the maturity of the same, then and in such an event the said J. A. Frazar is by these presents fully authorized and empowered, and it is made a special duty, at the request of the said C. C. Warren at any time made after the maturity of the said promissory note, to sell the said above-described real estate."

The Court then said, "It is clear from these provisions, we think, that the parties intended to, and did, fix and agree upon the time when the property should be sold to pay the debt. It is equally clear that the authority to foreclose and sell under this contract did not arise until default occurred in the payment of both principal and interest due at the maturity of the note, and not then by the trustee, except 'at the request of the said C. C. Warren at any time made after the maturity of said promissory note' ".

I fail to find these cases helpful in determining the question raised in this case. They all support the principle that execution can not be issued until the obligation is due and payable and some of them contain special conditions which must be complied with before it becomes due and payable.

Under the conditions of the bond which was given in this case, the installment of $11,000 on the principal was due and payable on June 24, 1947 and not having been

paid on that date the Baltimore Trust Company, which is assignee of the original obligee, was entitled to issue its execution for the purpose of collecting said installment of $11,000, with interest from December 24, 1946, to June 24, 1947 at 5%.

The rule is hereby dismissed.