MARY R. STODDARD et al., Respondents, *v.* THE VILLAGE OF SARATOGA SPRINGS, Appellant.

In an action to perpetually enjoin the defendant, a municipal corporation, from casting the sewage from a certain sewer upon plaintiffs' premises, and for damages, it appeared that the statute under which said sewer was constructed (Chap. 673, Laws of 1871, as amended by chap. 271, Laws of 1874), provides only for laying sewers along defendant's streets. About one-quarter of the sewer in question, as described in the petition therefor and as constructed, was through private grounds; this was with the consent of the owners. *Held*, that conceding defendant's board of trustees exceeded its authority in constructing the sewer through private grounds, yet as the general purpose was to execute the power vested in the corporation, it was chargeable with the injury to others resulting from the failure of its officers to properly perform the duty they assumed to discharge, and so was chargeable because of the improper location of the outlet, so as to cause such sewage to be discharged on plaintiff's premises, at least for the damages resulting from the sewage entering the portion of the sewer constructed in the streets.

*Searing* v. *Village of Saratoga Springs* (39 Hun, 307; 110 N. Y. 643), distinguished.

(Argued April 30, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 16, 1889, which affirmed a judgment in favor of plaintiffs entered upon the report of a referee.

The purpose of the action was to perpetually enjoin the defendant from casting the sewage from what was known as the Harrison street sewer on the premises of the plaintiffs; and to recover damages for the injury alleged to have resulted to them from such cause.

The referee found that in 1876, the defendant, through its board of trustees, constructed a public sewer in the village

from the intersection of Walton and Lawrence streets along the latter street to and across Church street to and along Harrison street a distance of about 1,500 feet to Division street; thence through private grounds of the United States hotel and Marvin and Benedict lot to Waterbury brook, which ran through the plaintiffs' premises; that along the line of the sewer, connection with it was from houses, and street basins were provided to take into it surface water and street washings; these connections and basins resulted in taking into and passing through the sewer, filthy water and obnoxious substances from streets, houses, etc., which were discharged on the plaintiffs' premises, there producing a nuisance and the injurious consequences complained of.

By chapter 673, Laws of 1871, provision was made by which a main sewer could be constructed in the village of Saratoga Springs, the expense of which to be eventually paid by assessment upon the taxable property of the village, also for putting in lateral sewers connecting with it to be charged by assessment upon those benefited by them; and for permission to owners of adjacent real estate to connect private sewers or drains with them. By chapter 271, Laws of 1874, after, by the first and second sections, repealing and amending the first section of the previous act, further provision was made relative to the construction of and relating to sewers in the village by sections 3, 4, 5 and 6, as follows:

"§ 3. Whenever a majority of the owners or occupants of premises upon any street or streets, or any section or portion of any street or streets in said village, shall petition the board of trustees of said village to lay a sewer along said street or streets, or any section or portion of said street or streets, clearly designating by maps or other proper description accompanying said petition, the portion of said street or streets, and the distance thereon, and the desired course of such sewer, and that said sewer be connected with the creek or main sewer at a point to be designated in said petition, then the board of trustees of said village are hereby authorized and empowered to grant the request of said petitioners, and to cause a sewer

to be laid along such street or streets, or section of street or streets, as set forth in said petition, and connect the same with the creek or main-sewer. Said board of trustees may cause the proper surveys, maps, plans and profiles to be made of said proposed sewer and filed with said board."

" § 4. Whenever any petition, as herein specified, shall be granted by said board of trustees, said board shall cause such sewer to be constructed of such materials and dimensions as they may adopt after proper consideration. Said board shall cause plans and specifications of such sewer to be prepared, and shall give at least one week's notice, daily, in a daily newspaper published in said village, where such plans and specifications can be seen and examined, and shall in such notice invite sealed proposals for the construction of such sewer, to be presented to the clerk of the board. At the end of the time specified in said notice, the board of trustees shall convene and open said proposals, and shall award the contract for the construction of said sewer to the lowest responsible bidder. Before awarding any contract for the construction of such sewer, the contractor shall execute to the village of Saratoga Springs, in such form and manner as such board shall prescribe, an undertaking or bond in the sum of at least twice the amount of the aggregate of such contract-price, with two sureties, who shall duly justify, conditioned for the faithful performance of the contract and the proper construction of such sewer, in conformity with the plans and specifications adopted by said board of trustees."

" § 5. The cost of constructing such sewer shall be assessed by the board of trustees upon the property adjoining said sewer, and such other property which the board may deem to be benefited by said sewer, or may at any time enjoy the use of said sewer, said board being guided in making such assessment by the valuation of the property assessed as the same shall appear upon the village assessment-roll at the time of such assessment, and said board of trustees shall have power to enforce collection of such assessments in the same manner as other taxes are collected in said village. But in no case shall

the property known as 'Congress Spring Park,' be assessed for lateral sewers so long as such property shall remain a park, and does not use, and is not benefited by, such sewer."

"§ 6. Said trustees shall prescribe rules for the use of such sewers, and shall have power to prevent any excavations in streets, or otherwise, which shall injure or interfere with the use of such sewers; and in case any such sewer shall require repairs, said trustees shall make the same, and charge, and assess the cost thereof upon the property enjoying the use of the same, in like manner as the cost of constructing the same was assessed and collected."

The referee determined that the plaintiffs were entitled to both injunctive relief and damages, which he assessed.

*Edgar T. Brackett* for appellant. The Harrison street sewer, so-called, is not a public sewer, does not belong to the defendant corporation, and hence the defendant is neither responsible for its construction, nor liable for damages, if any, occasioned by its subsequent use, either by its owners, or by those at whose instance it was constructed. (Laws of 1874, chap. 271, § 3; Laws of 1871, chap. 673; *Searing* v. *Saratoga Springs*, 39 Hun, 307; 110 N. Y. 643; *In re Rhinelander*, 68 id. 105; *McCaffrey* v. *Albany*, 12 Hun, 165; Dillon on Mun. Corp. §§ 421, 969, 970; *Cuyler* v. *Rochester*, 12 Wend. 165; *Anthony* v. *Adams*, 1 Met. 284; *Browning* v. *Owen Co.*, 44 Ind. 11; *Mayor, etc.*, v. *Cunliff*, 2 N. Y. 165; *Smith* v. *Rochester*, 79 id. 508, 512; *Cushing* v. *Bedford*, 125 Mass. 526, 528; *Lemon* v. *Utica*, 2 Barb. 104; *In re Second Ave.*, 66 N. Y. 395, 398; *People* v. *Otis*, 90 id. 48, 53; *State* v. *Chamberlain*, 38 N. J. L. 110, 113.) The referee erred in holding the defendant liable for damages occasioned by acts of owners of land along the line of said sewer, in connecting their own premises therewith, and which acts the defendant neither authorized nor could prevent. (*Chipman* v. *Palmer*, 77 N. Y. 51.) The action, in so far as it seeks damages, is for an injury to property, and clearly comes within the six year limitation. (Code Civ. Pro. § 382.)

*John L. Henning* for respondents. The judgment in this action is not appealable to this court. (Code Civ. Pro. § 191; *Knapp* v. *Deyo*, 108 N. Y. 518; *Roosevelt* v. *Linkert*, 67 id. 447; *Brown* v. *Sigourney*, 72 id. 122; *King* v. *Glavin*, 62 id. 238; *Davidson* v. *Alfarno*, 80 id. 660; *Granville* v. *N. Y. C. & H. R. R. R. Co.*, 104 id. 674; *Produce Bank* v. *Morton*, 67 id. 199; *Payne* v. *Becker*, 37 id. 153–157.) The sewer in question is a public and not a private sewer. (Laws of 1871, chap. 673, §§ 3, 7; Laws of 1874, chap. 271, § 3.) Defendant is equally liable whether it discharges the sewer directly onto plaintiffs lot or at a point up the stream in Waterbury brook, where it must necessarily be carried there. (*Noonan* v. *Albany*, 79 N. Y. 470; *Hooker* v. *Rochester*, 37 Hun, 181, 182, 183; *Sleight* v. *Kingston*, 11 id. 594–596; *Beach* v. *Elmira*, 22 id. 158; *Hendershott* v. *Othemwa*, 46 Ia. 660; *Pettigrew* v. *Evansville*, 25 Wis. 236.) Defendant cannot escape liability on the plea that the plan of the sewer was the exercise of a judicial discretion on the part of the trustees. (*Seifert* v. *Brooklyn*, 101 N. Y. 136; *Noonan* v. *Albany*, 79 id. 470; *Ashley* v. *Port Huron*, 35 Mich. 296; *Jacksonville* v. *Lambert*, 62 Ill. 519; *Woodward* v. *Worcester*, 121 Mass. 245–248; *Inman* v. *Tripp*, 11 R. I. 520–523.) When the use of the sewer demonstrated that it would necessarily result in plaintiff's injury the ordinary rules do not apply, and defendant itself was bound to provide proper means to carry off the filth without injury to plaintiff. (*Byrnes* v. *Cohoes*, 67 N. Y. 207; *Bradt* v. *Albany*, 5 Hun, 591.) Defendant is liable for plaintiffs' damages caused by the use of the sewer. (*Chapman* v. *City of Rochester*, 110 N. Y. 273.) Defendant cannot escape liability simply because the outlet of the sewer is carried across a strip of private land. (*Noonan* v. *City of Albany*, 79 N. Y. 470.) Defendant is liable if its trustees in the exercise of a power constitutionally conferred in constructing this sewer carried its outlet across private lands. (*In re Rhinelander*, 68 N. Y. 105; *People ex rel.* v. *Haines*, 49 id. 537; Dillon on Mun. Corp. §§ 765–768; *Lee* v. *Sandy Hill*, 40 N. Y. 442; *B. & H. T. Co.* v. *Buffalo*, 58 id.

639; *Peters* v. *Mayor, etc.,* 8 Hun, 405–408; *Williams* v. *Dunkirk,* 3 Lans. 44; *Thayer* v. *Boston,* 19 Pick. 511–515; *Hawkes* v. *Charlemonte,* 107 Mass. 414.) The claim is not barred by the Statute of Limitations as the nuisance is a continuous one and the referee properly allowed plaintiffs damages for the six years previous to the commencement of this action. ' (*Baldwin* v. *Calkins,* 10 Wend. 167; *Colrick* v. *Swinburne,* 105 N. Y. 503; *C. S. Co.* v. *B. N. Y. R. R. Co.,* 52 Barb. 390.) Defendant has ample power to either condemn plaintiff's land and take it for the use of this sewer or to change the course of the sewer from the south side of Division street or to continue it from the point where it terminates in Walworth street, and thereby abate the nuisance on plaintiffs' premises. (Laws of 1887, chap. 136.)

BRADLEY, J. The leading proposition urged on the part of the defendant is that the sewer in question is not a public one, and that the defendant is neither chargeable with its construction nor liable for its consequences.

The defendant has for many years been a municipal corporation. And by reference to L. 1874, ch. 271, it will be seen that upon the granting by the board of trustees of a petition, etc., made in conformity with the provisions of the act, it is made its duty to cause the sewer asked for to be constructed, and after taking the requisite preliminary proceedings, to award the contract for the work and take security for its performance. (Id. §§ 3, 4.) The construction of a sewer is not only to be in accordance with the plans, etc., prepared by the direction of the board, but the trustees are to prescribe rules for its use, and when repairs are required, to make them (Id. § 6), and the cost of construction is to be realized by assessment upon the property benefited, enforced in the manner other taxes are collected in the village. (Id. § 5.) This could not lawfully be done for work of a mere private nature. The purpose of sewers so constructed is thus necessarily characterized as public, and the power is legitimately vested in the corporation to accomplish it in the manner authorized by the

statute. It appears by the petition and proceedings following it, that the design was to construct the sewer in question pursuant to the provisions of the act of 1874. It is, however, urged that it was not authorized by or constructed in conformity with the provisions of that act, because within the proposed line of it as described in the petition and on which it was located was embraced private lands. It is true that the distance of about five hundred of the two thousand feet of the line of sewer as given by the petition and as constructed was not in any street, but through private grounds, with the consent of the owners. The statute provides only for laying sewers along the streets of the village; and there is no provision in the last-mentioned act to appropriate lands elsewhere other than for the purposes of the main sewer mentioned in the second section. It may be that the board of trustees exceeded its authority in granting the petition and in departing from the lines of the streets after laying the sewer fifteen hundred feet in them, and constructing it through private grounds the other five hundred feet to its outlet in Walworth street. In the view taken that question is not necessarily here for determination. For the purpose of enforcing assessments to pay the cost of the work it was essential that the proceedings should have been had in substantial conformity with the provisions of the statute from which was derived the municipal authority to do that which was sought to be accomplished. The present case is not dependent for its support upon the regularity of the proceedings of the village authorities, but is to charge the corporation with liability for the consequences of a work alleged to have been performed in a negligent or improper manner. If it were *ultra vires* in such sense as not to be within the scope of the corporate powers of the defendant, the latter would not be answerable for the consequences resulting from it, although the persons causing the work to be done were its officers or agents, and assumed to act as such in doing it. (*Mayor, etc.,* v. *Cunliff,* 2 N. Y. 165; *Smith* v. *City of Rochester,* 76 id. 506.) But that is not the situation presented here. It was legitimately within the corporate power of the

defendant to construct sewers ; and it may be that in attempting to execute it, the constituted authorities went to some extent beyond the authority conferred upon the corporation and them as its officers.    The referee has found that the trustees were not chargeable with *mala fides.*    It may, therefore, be assumed that the general purpose was to execute the power vested in the municipal corporation which they represented in causing the work to be done ; and thus acting the defendant may be chargeable with the injury to others resulting from their failure to properly perform the duty which they assumed to discharge, although it may have been occasioned by irregularity or acts on their part in excess of authority.    (2 Dillon's Mun. Corp. § 769 [4th ed.], § 971 ; *Lee* v. *Village of Sandy Hill*, 40 N. Y. 442 ; *Buffalo, etc., Turnpike Co.* v. *City of Buffalo*, 58 id. 639 ; *Thayer* v. *City of Boston*, 19 Pick. 511 ; *Hawks* v. *Charlemont*, 107 Mass. 414.)

It may be observed that the sewer was constructed three-quarters of its length along certain streets in the village ; and the referee has awarded such damages only as he found was occasioned by sewage which entered the sewer along the streets. This evidently was done upon the theory that the portion of it not laid along the streets was not necessarily under the control of the corporation.    This portion through the private lands had the effect to convey the sewage from the other parts of it in the streets to its outlet, thus causing the injury produced by it.

It is unnecessary for the purposes of this review to consider the corporate relation, other than in that aspect, to such portion of the sewer.    The sewer within the streets was certainly under the control of the defendant.    And one of its purposes was to take into it and thence to its outlet whatever was conducted into it by means of lateral drains and sewers from houses, etc., along its line ; and the defendant was liable to the plaintiffs for so improperly providing or locating the outlet as to cause the sewage to pass from it onto their premises. (*Noonan* v. *City of Albany*, 79 N. Y. 470 ; *Chapman* v. *City of Rochester*, 110 id. 273.)

Reference is made by counsel to *Searing* v. *Village of Sara-toga Springs* (39 Hun, 307 ; 110 N. Y. 643), but that case has no necessary application to the one at bar.    There the pipe which conducted the sewage into the plaintiff's lot was laid on her own land by her consent or request ; and she was at liberty to take it up and thus remove the cause of her complaint.

Whatever view may be taken of the relation of the cor-poration to the lower portion of the sewer, the defendant is using it as a conduit to carry the sewage from the sewer laid along its streets to the outlet, and the only outlet provided for its discharge.    No other question seems to require the expres-sion of consideration.

The judgement should be affirmed.

All concur, except POTTER, J., not voting.

Judgment affirmed.