E. H. LOVE v. THE CITY OF RALEIGH.

*Cities—Municipal Liability for Acts of Agents — Negligence—Trial—Harmless Error.*

1. A city acting within the purview of its delegated authority is not responsible for the acts of its agents done in the exercise of its judicial, discretionary or legislative powers ; but where the city is acting in its ministerial capacity, and in the exercise of powers conferred for its own benefit and assumed voluntarily, it is answerable for the torts of its agents, provided they are acting within the scope of their agency and of the municipal authority.

2. If an act complained of lies wholly outside of the general or special powers of a municipal corporation, the corporation is not liable in damages for such act, whether it was done by its express command or not.

3. A city has no implied authority to provide for a pyrotechnic display on a Fourth of July or anniversary celebration; therefore,

4. A city, not having the express power to provide for a display of fire-works, is not answerable in damages for the negligence of its agents in conducting such a display ordered by it.

5. Where, in the trial of an action, a plaintiff is not entitled to recover in any view of the evidence, whether admitted or excluded, the exclusion of evidence is not error of which plaintiff can complain.

CIVIL ACTION, tried before *Bynum, J.*, and a jury, at October Term, 1894, of WAKE Superior Court. The action was brought by Alice L. Love, through her next friend and father, E. H. Love, to recover damages for an injury inflicted upon her through the alleged negligence of the defendant's agents, who conducted a fire-works display during the celebration of the centennial anniversary of the city of Raleigh, in October, 1892. It was in evidence that the mayor and board of aldermen, in pursuance of a resolution adopted by the board of aldermen to fittingly celebrate the centennial anniversary of the City of Raleigh, appointed a committee of five aldermen to act in conjunction with a larger committee of citizens, to devise methods for and to superintend the celebration, and appropriated from the treasury of the City the sum of $2,000 towards defraying the expenses. The aldermen also tendered, by resolution, the use of Moore square for fireworks display. An ordinance of the city was put in evidence which prohibited fire-works in the city, but provided that "nothing herein contained shall prohibit the exhibition of fireworks on occasions of public rejoicing, under the control of the Mayor or Chief of Police."

It was admitted that on " the Committee on Pyrotechnics," appointed by the Board of Managers of the Celebration, were three members of the Board of Aldermen.

There was evidence of unskillful management of the fireworks display, and that a stick from a discharged rocket fell among the on-lookers, and striking the plaintiff (a child of nine years of age) in the face, mangled the cheek and neck and so injured one eye that it had to be removed.

Other facts appearing in the testimony are referred to in the charge of *Judge Bynum* at the trial.

At the close of the evidence, the plaintiff's counsel handed to the Judge presiding a written prayer, signed by counsel, for certain special instructions, among which was the following, numbered seven:

" That if the fireworks, consisting of rockets, bombs, &c., were sent up at night, in a public square in the city, after those having the display in charge on behalf of the city had been notified by the experts sent out with the fireworks that the place was not suitable for the purpose, and was dangerous, and at the time of sending up such rockets, &c., the street lying immediately north of the point from which the rockets were sent up, and in close proximity thereto, was thronged with a promiscuous crowd of men, women and children, who were close enough to be struck by falling rocket sticks; and the rockets were set so that the sticks would be likely to fall to the northward of the point from which the rockets, &c., were sent up, and no notice or warning was given to spectators of the danger of occupying said street, and the rockets, &c., were so sent up that the sticks fell to the north, northeast and northwest of the point from which they were sent up, that such conduct constitutes negligence in law.

" And if plaintiff attended the display as a spectator upon the invitation, express or implied, of the managers of the centennial celebration, and was injured by such negligence, as above stated, she is entitled to recover, although the display was gratuitous."

The Judge refused to give this instruction, and charged the jury as follows:

"Now, gentlemen of the jury, I have read you the notes of the evidence, but you must remember the evidence for yourselves and be governed by your recollection of it. Now,

gentlemen, out of this case grows three questions that are submitted to you to be answered. I will take the second question first: did the plaintiff, by her own negligence, contribute to the injury she sustained? I instruct you, if you believe the evidence in this case, to answer that question No, without going into the whys and wherefores or the reasons. Now comes the first question—'Was the plaintiff injured by the negligence of the defendant?' I charge you thus: In order to hold the defendant liable, under any circumstances, for the injury of the plaintiff, it must be made to appear to your satisfaction that the defendant, that is, the City of Raleigh, authorized the display of the fireworks at the place where and in the manner in which they were conducted, and in the absence of proof of such authority it would be your duty to answer that first issue No. Now the question is whether there is proof of such authority on the part of the city for that display of fireworks first. I charge you as a matter of law, if you find the fact to be that the Board of Aldermen of the city met together and appointed a committee of their own to co-operate with committees appointed by the citizens for the purpose of having the centennial celebration, and these committees jointly agreed that, as part of that celebration, they would have the fireworks display, and in consequence of that, the city, by resolution, tendered to them Moore Square, and they accepted that tender by the city, and had the display there, that would be authority on the part of the city for the display.

"That, in itself, does not make the city liable for the damages to the plaintiff in this action; before the plaintiff can recover further proof is necessary on her part. She must show negligence in the display that was made that night, such negligence as shall be attributed to the city of Raleigh, and for which it shall be held responsible, otherwise it will

be your duty to answer the first question No. The question is, 'Was the plaintiff injured by the negligence of the defendant?' Not by shooting off fireworks, but by the negligence of the defendant. What is negligence is a question of law. The facts that are necessary to constitute the negligence you must pass upon and find. The plaintiff insists that she has shown negligence. She relies upon the fact that the streets were thronged with people on all sides; that these fireworks were sent up from a vacant square, on four sides of which, on the opposite sides of the streets, houses were built, and the streets themselves filled with people; that the fireworks were not properly sent up, and that in consequence of a failure to send them up properly, a stick from one of the rockets fired, fell and caused the injury. She alleges as another reason of negligence, that no notice was given to the people who were invited to attend, by the proceedings read to you, as to where these sticks were to fall, where the points of danger were and where was the proper place to stand to see the fireworks.

"The defendant alleges that it was not incumbent upon it to notify the people where to stand to see the fireworks. It alleges that it was done without fee or reward to the city, but for the entertainment of such persons as might think proper to go and look at it. They allege further that they employed for the purpose of sending up these fireworks, experts whose duty and business it was to see that it was done properly. They allege further that the committee in charge of these fireworks, as testified to by Mr. Bowes, procured the lumber and fixed the arrangements that the experts employed by the city stated were necessary in order that those things might be properly sent up and the display properly conducted on the part of the city, and that it was done in accordance with these directions. The plaintiff says another circumstance relied upon by her is the fact

that the ground secured was stated by one of the experts not to be a proper place, but that it would be attended with some danger.

"The defendant, in reply, says that it is obvious from the surroundings that the danger alluded to was not danger to life or limb of persons, but to the property of the citizens, and not to any other injury.

"Now, gentlemen of the jury, as to the law, I am frank to state to you that I am not absolutely clear in my own mind as to what is proper in this case. I charge you, however, that it is your duty to take the law from me; whether right or wrong, that will be decided in a Court superior to this one. It was not the duty of the defendant to notify the people where to stand in order to see, or where would likely be points of danger. That, in itself, is not negligence. I charge you further that if you find the fact to be that they employed experts who knew what they were doing in sending up these rockets, and that they were sent up in the way in which fireworks should be properly sent up, and the accident occurred, it was a pure accident, although injury might have resulted, it would be what lawyers call '*damnum absque injuria*,' for which the defendant would not be liable, and it would be your duty to answer the first issue No.

"If you are satisfied from the surroundings, from the manner in which those sticks fell, from the improper manner in which the display was conducted, from the fact that two of the aldermen, as testified to by Mr. Bowes, himself and Stronach, were on the committee during all the time they were being sent up, if these and other circumstances satisfy you that the arrangements for sending them up were improperly conducted by the city, or that the city did not make proper inquiry to find out whether the men they had as experts knew what their business was, and the experts

improperly performed their duty, in consequence of which the injury happened, then I charge you the defendant would be liable for the injury resulting from that, and it would be negligence, and you will answer the first question Yes.

"I believe I will not say anything more on the first issue.

"As to the third issue. If you answer the first question Yes, I charge you to answer the second one No. If you answer the first one No, that settles it. You need not go any further. If the first be answered Yes, that the plaintiff was injured by the negligence of the defendant, the second No, that she did not contribute it to herself, the next question would be what damage is the plaintiff entitled to recover? The measure of damages, gentlemen of the jury, is what you shall find to be the injury in dollars and cents that she has sustained, in consequence of the loss of her eye, taking into consideration her age, prospects in life, what she may have accomplished with two eyes and cannot with one, the pain and suffering she underwent in consequence of the injury inflicted—taking these circumstances into consideration, what is a fair compensation, in dollars and cents, to the child? That is the answer to the third question, and I feel it my duty to say to you that in this case punitive damages will not be allowed, and what I mean by that is this, the damage the plaintiff is entitled to recover is compensation for the injury—not a punishment of the defendant—not to punish the corporation for any negligence on its part, but to compensate the plaintiff for the injury she sustained in consequence of the negligence on the part of the defendant corporation and no more. That is, as nearly as I can state, the law as I conceive it. Gentlemen, take the case."

The jury returned a verdict for the defendant, whereupon

plaintiff moved the Court for a new trial upon the following grounds:

1. For that the Judge charged the jury, among other things, as follows: "They (alluding to the defendant) allege further that they employed, for the purpose of sending up these fireworks, experts, whose duty and business it was to see that it was done properly. They allege further, that the committee in charge of the fireworks, as testified to by Mr. Bowes, procured the lumber and fixed the arrangements, that the experts, employed by the city, stated were necessary in order that those things might be properly sent up and the display properly conducted on the part of the city, and that it was done in accordance with these directions. * * * I charge you further that if you find the fact to be that they employed experts who knew what they were doing in sending up these rockets, and that they were sent up in the manner in which fireworks should be properly sent up, and the accident occurred, it was a pure accident, although injury might have resulted. It would be what lawyers call *damnum absque injuria*, for which defendant would not be liable, and it would be your duty to answer the first issue No." To which portion of the charge the plaintiff excepts upon the ground that there was no evidence before the Court and the jury upon which to base said instruction, but the same is based upon an hypothetical state of facts only.

2. For that the Judge further charged the jury: * * * "If these and the other circumstances satisfy you that the arrangements for sending them (the fireworks) up were improperly conducted by the city, or that the city did not make proper inquiry to find out whether the men they had as experts knew what their business was, and the experts improperly performed their duty, in consequence of which the injury happened," &c. To which portion of the charge

the plaintiff excepts upon the ground that there was no evidence before the Court and jury as to so much of this portion of the charge as assumed that experts were employed by the defendant to send up the fireworks.

3. For that in the extracts from the charge above quoted it was, in effect, given the jury to understand that if the men who came to the city with the fireworks were experts who understood their business of sending up fireworks, the defendants would not be liable for the negligence in sending up the fireworks. In which the plaintiff insists there was error, and therefore excepts.

4. For that the Judge refused to give the written prayer for special instructions numbered seven. In which refusal plaintiff insists there was error, and excepts.

5. For that the Judge instructed the jury, "It was not the duty of the defendant to notify the people where to stand in order to see or where would likely be points of danger. That, in itself, is not negligence." In which plaintiff insists there was error, and excepts.

The motion was refused and from the judgment for defendant the plaintiff appealed.

*Messrs. Battle & Mordecai,* for plaintiff (appellant).
*Mr. J. N. Holding* and *Strong & Strong,* for defendant.

AVERY, J.: The principal questions presented by this appeal are, first, whether the city of Raleigh was empowered by any general or special statute to purchase fireworks, and order a committee to direct the manner of making the display ; second, whether, if no such authority had been delegated to the municipality, it would be answerable for the wrongful conduct of agents acting within the scope of its instruction to them, but in the exercise · of authority not delegated to it by the Legislature.

It will possibly aid us in the elucidation of these questions to lay down some general fundamental rules defining and fixing the limits of municipal powers. So long as a city keeps within the purview of its delegated authority, it is not responsible for any act of its agents, done in the exercise of its judicial, discretionary or legislative powers, except where subjected to such liability by some express provision of the Constitution or of a statute. *Moffitt* v. *Asheville,* 103 N. C., 237 ; *Hill* v. *Charlotte,* 72 N. C., 56 ; 1 Sherman & Redfield on Neg., Sec. 262 ; *Robinson* v. *Greenville,* 42 Ohio, 625. But when such a corporation is acting in its ministerial capacity or its corporate, as distinguished from its governmental character, in the exercise of powers conferred for its own benefit and assumed voluntarily, it is answerable for the torts of its authorized agent, subject to the limitation that such wrongful acts must not only be within the scope of the agency, but also within the limits of the municipal authority. *Moffitt* v. *Asheville, supra,* 254 ; 2 Dillon Mun. Corp., (4th Ed.) Sec. 968 (766).

In the section cited above, Judge Dillon says : " If the act complained of necessarily lies wholly outside of the general or special powers of the corporation, as conferred by its charter or by statute, the corporation can in no event be liable to an action for damages, whether it directly commanded the performance of the act, or whether it be done by officers without its express command ; for a corporation cannot, of course, be impliedly liable to a greater extent than it could make itself by express corporate vote or action." Referring especially to the wrongful acts of agents of municipalities, the same author says in a subsequent section (969a): " As to torts or wrongful acts not resting upon contract, but which are *ultra vires* in the sense above explained (viz., wholly and necessarily beyond the possible scope of the chartered powers of the munici-

116—20

pality) we do not see on what principle they can create an implied liability on the part of the municipality. If they may, of what use are the limitations of the chartered corporate powers?" 2 Thompson on Neg., 737; *Smith* v. *Rochester*, 76 N. Y., 506; *Mayor* v. *Cundiff's,* N. Y., 165. /2

It is not denied that if the agent in the course of his employment is guilty of negligence or commits even a wilful trespass with the belief and intention that the act will enure to the benefit of the principal, then not only does the doctrine of *respondeat superior* apply, but both principal and servant may be made to answer for the resulting damage. See authorities cited in 114 N. C., on pp. 416 & 417, especially 2 Dillon Mun. Corp., Sects. 979, 980 *et seq;* *Hewitt* v. *Swift*, 3 Allen, 420; *Johnson* v. *Barber,* 5 Gilman (Ill.) 425; *Wright* v. *Wilcox*, 19 Wendell, 343.

"Without express power (says Judge Dillon, 1 Mun. Corp., Sec. 149-100) a public corporation cannot make a contract to provide for celebrating the fourth of July, or to provide an entertainment for its citizens or guests. Such contracts are void and, although the plaintiff complies therewith on his part, he can not recover of the corporation." *Hodges* v. *Buffalo*, 2 Denio (N. Y.) 110; 2 Dillon, Sec. 916 *et seq;* *Austin* v. *Coggeshall*, 12 R. I., 329.

It is needless to cite further authority in support of the proposition that if a city is not empowered to contract a debt for the purpose of making a display on a national holiday, or on such an occasion as the centennial anniversary of its existence as a municipality, it would follow of necessity, that it could not, by empowering agents to supervise a display that it could not lawfully pay for, subject its taxpayers to liability for the wilful wrong or negligence of such agents, when they are acting entirely outside of the scope of any duty that the city is authorized to impose. Dillon Mun. Corp., Sec. 969a. A municipality is not answerable

for torts of a servant, except where the wrong complained of is an act done in the course of his lawful employment or an omission of a duty devolving upon him as an incident to such service.

Before entering upon the consideration of the sufficiency of the statutes relied upon, to authorize the action of the Mayor and Aldermen of the City in making an appropriation and appointing a committee to purchase the necessary articles and to supervise the pyrotechnic display on the occasion referred to, it is perhaps best to recur to the rule that a municipality is clothed with those powers only which are granted in express terms, or necessarily or fairly implied from or incident to those expressly granted and which it is essential to exercise in order to carry out objects and purposes of creating the corporation. 1 Dillon Mun. Corp., Sec. 89 (55); *State* v. *Webber*, 107 N. C., 962.

In all of the cases relied upon by plaintiff's counsel it seems that the municipalities had the authority to pass an ordinance or make an order under color of authority. It has not been contended or alleged that the action is founded upon the creation of a nuisance by the city, nor can it be successfully maintained that the use of fireworks is analagous to the case of blocking up a public highway, which it is the duty of the municipality to maintain in good condition.

The charter of the city (Ch. 243, Laws of 1891) grants to the Mayor and Aldermen when assembled, the following powers:

"SEC. 31. That the aldermen when convened shall have power to make and provide for the execution thereof, such ordinances, by-laws, rules and regulations for the better government of the city as they may deem necessary: *Provided*, the same be allowed by the provisions of this act and be consistent with the laws of the land."

"Sec. 32. The board of aldermen shall contract no debt of any kind unless the money is in the treasury for its payment, except for the necessary expenses of the city government."

"Sec. 33. That among the powers hereby conferred on the board of aldermen, they may borrow money only by the consent of a majority of the qualified registered voters, which consent shall be obtained by a vote of the citizens of the corporation after thirty days public notice, at which time those who consent to the same shall vote 'approved' and those who do not consent shall vote 'not approved'; they shall provide water and lights, provide for repairing and cleansing the streets, regulate the market, take all proper means to prevent and extinguish fires, make regulations to cause the due observance of Sunday, appoint and regulate city policemen, suppress and remove nuisances, regulate, control and tax the business of the junk-shops and pawn-shop keepers or brokers, preserve the health of the city from contagious and infectious diseases; may provide a board of health for the city of Raleigh and prescribe their duties and powers, provide ways and means for the collection and preservation of vital statistics; appoint constables to execute such precepts as the Mayor or other persons may lawfully issue to them, to preserve the peace and order, and execute the ordinances of the city; regulate the hours for sale of spirituous liquors by all persons required to be licensed by the board, and during periods of great public excitement may prohibit sales of spirituous liquor by all such persons for such time as the board may deem necessary; may pass ordinances imposing penalties for violations thereof not to exceed a fine of fifty dollars or imprisonment for thirty days........................ They shall have the right to regulate the charge for the carriage of persons, baggage and freight by omnibus or other vehicle,

and to issue license for omnibuses, hacks, drays or other vehicles used for the transportation of persons or things for hire. They may also provide for public schools and public school facilities by purchasing land and erecting buildings thereon and equipping the same within the corporate limits of the city or within one-half mile thereof. They may also construct or contract for the construction of a system of sewerage for the city and protect and regulate the same by adequate ordinances; and if it shall be necessary, in obtaining proper outlets for the said system, to extend the same beyond the corporate limits of the city, then, in such case, the Board of Aldermen shall have the power to so extend it, and both within and without the corporate limits to condemn land for the purposes of right-of-way or other requirements of the system, the proceedings for such condemnation to be the same as those prescribed in chapter 49, section 6, of the Private Laws of 1862 and '63, or in the manner prescribed in chapter 49, volume 1, of *The Code*."

In these provisions of the charter and in sections 3800 to 3805, both inclusive, of *The Code*, will be found enumerated all of the powers granted to the city by general or special laws.

We do not think that the general power to pass ordinances can be held to carry with it by implication any such grant of authority as that to expend the public money for, and conduct under the auspices of the city officers such a display as that described by the witnesses. . We are aware that such authority has been assumed by cities and towns in many of the States, but where the exercise of it has been drawn in question in the Courts, it has been sustained only when some statute expressly conferred the power to make the appropriation for that particular purpose. As we understand the authorities cited, the Supreme Court of

LOVE *v.* RALEIGH.

Massachusetts has given its sanction to the validity of expenditures for such purposes only where some express provision of law was shown to warrant it. In one of the cases cited from that State (*Tindley* v. *Salem,* 137 Mass., 171) the Court held that even where a person was injured by the negligent use of fireworks by the servants of a city that had ordered the display for the gratuitous amusement of the people under the authority of a statute, the city was not liable to answer in damages. In an earlier case it had been held that a city council must act strictly in pursuance of statutory power to make such displays to subject it to liability for injuries due to the negligence of its servants in the management of it. *Merriam* v. *Lourevel,* 98 Mass., 219. Where no statutory authority is shown for a wrongful act done under the direction of a municipality, the Supreme Court of Massachusetts lays down the general rule as to its liability, substantially as we have stated it. *Cavanaugh* v. *Boston,* 139 Mass., 426 ; *Clafflin* v. *Hopkinson,* 4 Gray, 502. If there is no authority conferred upon the Mayor and Aldermen by the statute mentioned, and we can discover none after diligent search and examination, it is immaterial whether the persons in immediate control of the fireworks were servants acting under the direction of the committee appointed by a resolution passed by the Mayor and Commissioners and stood in the relation of agents to the city, or whether they were independent contractors. If the authorities of the city acted *ultra vires* in ordering the display, the question whether they employed expert pyrotechnists and acted upon their advice after securing their services, is equally as irrevelant. If, therefore, it were conceded that the Chairman of the Committee, appointed by the city for the purpose, supervised and directed the negligent management of the fireworks and at such a place as it was evidence of a want of care to select,

we think it was the duty of the Court nevertheless to tell
the jury that the Mayor and Aldermen were not authorized
by law to make an appropriation for and direct the man-
agement of a display of fireworks, and that the city was
not liable to respond in damages for the wrongful or negli-
gent conduct of a servant acting under instructions given
by the City but without authority of law.    For the reasons
given, we think that the Court should have instructed the
jury that in no aspect of the evidence was the defendant
corporation liable for the acts of its servants in the man-
agement of the fireworks.    Whether the rulings of the
Court upon the admissibility of testimony were abstractly
erroneous or not, is not material, since whether excluded or
admitted, it was manifest that the plaintiff was not in any
view of the evidence entitled to recover.    There was no
error of which the plaintiff can justly complain and the
judgment must be affirmed.

Affirmed.

MONTGOMERY, J., did not sit.