HIRAM P. WHITACRE, ADMINISTRATOR OF THE ESTATE OF BENNIE HAIGLER, v. CITY OF CHARLOTTE, A MUNICIPAL CORPORATION.

(Filed 3 January, 1940.)

1. Dedication § 1: Easements § 3—

An allegation of permissive user by the public of a path across private land within the corporate limits of a municipality and the construction by the municipality of a bridge across a creek on the land for the convenience of those using the path, is insufficient to show that the public had acquired title of the way as against the owner of the land either by adverse user or implied dedication.

2. Municipal Corporations § 14—

The duty of a municipality to maintain its streets in proper repair and reasonably safe condition applies as well to bridges under its control used by the public for the purpose of travel.

3. Pleadings § 20—

A demurrer not only admits the specific facts alleged in the complaint but also relevant inferences of fact necessarily deducible therefrom.

4. Municipal Corporations § 14—Fact that bridge is constructed on private lands does not relieve municipality of liability when it exercises control thereover and by acts invites public to use same as a public way.

In this action against a municipality, the complaint alleged in substance that the public, by permission of the owner, used a path across private

lands within the corporate limits as a short cut between two city streets, that the public used stepping stones in crossing a creek on the lands until the municipality, at the request of citizens and residents of the locality, constructed a bridge across the creek for the public convenience, that the municipality on one or two occasions closed the bridge for repairs and that plaintiff's intestate was killed as a result of the municipality's failure to keep the bridge in proper repair and in a reasonably safe condition. *Held:* The facts alleged disclose that the municipality constructed a bridge for public use and exercised control thereover and, inferentially at least, treated and held out the bridge as a public way, and defendant's demurrer to the complaint should have been overruled, it not being prerequisite to liability on the part of the city in such case that it own the way as a public street.

**5. Municipal Corporations § 12—**

The negligent failure of a city to maintain in a reasonably safe condition for public travel a bridge built by it over private lands within the city limits for the use of the public comes within the exception to the general rule, and the municipality may not escape liability on the ground that its negligence was in the exercise of a governmental function.

**6. Municipal Corporations § 13b—**

A municipality may not escape liability for its negligence in failing to maintain in a reasonably safe condition a bridge constructed by it over private lands for the use of the public on the ground that its construction of the bridge was *ultra vires*, since the construction of the bridge is within its general corporate powers and it may be held liable for acts done therein though done at an unauthorized place or in an unauthorized manner.

**7. Pleadings § 20—**

Upon demurrer, the allegations of the complaint will be liberally construed in favor of the plaintiff, C. S., 535.

STACY, C. J., BARNHILL and WINBORNE, JJ., dissent.

APPEAL by plaintiff from *Johnston, Special Judge,* at October Term, 1939, of MECKLENBURG. Reversed.

Plaintiff instituted this action to recover damages for death of his intestate alleged to have been caused by the negligent failure of defendant to maintain a foot bridge across a stream within the city limits. Defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained.

The material facts alleged in the complaint may be briefly stated as follows: Sugaw Creek flows north and south through a portion of the city of Charlotte, and through the grounds of the Thompson Orphanage. There are streets east and west of the orphanage property paralleling the stream. By permission of those in charge of the orphanage, residents of the community and the public were accustomed to use a walkway a short distance across the orphanage ground on either side of and

approaching the creek and to cross the creek, formerly on stepping stones, now by the bridge erected by the city. On either side of the creek are located city schools, and the pathway and bridge are used by those going to and from said schools as well as by the public. In 1929, at the request of citizens and residents of the locality, and for the public convenience, the city by resolution authorized the construction of a bridge across the stream, at a cost of $268. While the resolution of the city commissioners authorized "the erection of a bridge over Sugaw Creek on First Street between Cecil and Morrow," at the request of the local residents the bridge was constructed several hundred feet south of the point where First Street extended would have crossed the creek. On one or two occasions the city closed the bridge temporarily for the purpose of repairing it. The complaint alleged that, due to the negligent failure of the city to properly construct, inspect and maintain the bridge, it fell while plaintiff's intestate was thereon, causing his death.

From judgment sustaining the demurrer, plaintiff appealed.

*Uhlman S. Alexander for plaintiff, appellant.*
*J. M. Scarborough for defendant, appellee.*

DEVIN, J. The sufficiency of the complaint to state a cause of action against the city of Charlotte is challenged by the demurrer upon the ground that it appears that the foot bridge complained of was not constructed on a street, or on property belonging to the city, and did not immediately connect city streets or public ways, and that consequently in law no duty was imposed upon the city to inspect, maintain and repair the bridge.

There is no allegation in the complaint that the walkways leading to the bridge were over the property of the city. The public who passed over the walkways leading to the bridge did so by permission of the owner of the land. The allegation of permissive use of the walkway across the lands of the Thompson Orphanage by the public since the construction of the bridge, or before when the stream was crossed by means of stepping stones, is insufficient to show that the public had acquired title to the way as against the owner of the land, either by adverse user or implied dedication. *Hemphill v. Forest City,* 212 N. C., 185, 193 S. E., 153.

However, it does appear from the complaint that for the convenience of the public the city undertook to construct a bridge within the city limits, at the public expense, and to keep it in repair and to exercise control over it, and thereby invited the public to travel upon it and to use it as a public way.

It is a well recognized rule that a duty rests upon a municipal corporation to maintain its streets in proper repair and reasonably safe condition (*Willis v. New Bern,* 191 N. C., 507, 132 S. E., 286), and this duty applies as well to bridges under its control used by the public for the purpose of travel. McQuillin Municipal Corporations (2nd Ed.), sec. 2938; *Michaux v. Rocky Mount,* 193 N. C., 550, 137 S. E., 663.

While it is not specifically alleged that the place of injury was in a public way or that the bridge and walkways across the lands of the Thompson Orphanage constituted a public way (*Bickel Paving Co. v. Yeager,* 176 Ky., 712), or that the plaintiff's intestate was injured by reason of any defect in a city street or public way (*Duren v. Charlotte,* 210 N. C., 824, 185 S. E., 434), it does appear from the facts alleged, inferentially, that the city had treated and held out the bridge as a public way. It constructed the bridge for use by the public as a means of crossing the stream. It exercised control over the bridge, and impliedly invited the public to use it. The demurrer for the purpose of testing the sufficiency of the complaint admits not only the specific facts alleged therein but also relevant inferences of fact necessarily deducible therefrom. *Ins. Co. v. McCraw,* 215 N. C., 105.

The general rule is stated in McQuillin Municipal Corporations (2nd Ed.), sec. 2922, as follows: "Where an injury occurs on a road or sidewalk, and it is sought to hold the municipality liable in damages, the first question which presents itself is whether the place of the accident was a public highway under the control of the municipality. If not a public highway, the municipality is not liable. However, if the municipality has exercised control over the way and improved or recognized it as a public street, that is ordinarily sufficient, and in such case the municipality will be estopped to deny that the way was a public street. . . . The mode in which the street was established is immaterial. . . . The question whether the title to the street is in the municipality is immaterial. The material thing which must exist is the act of the municipality inducing the people to believe that the way is a public one. . . . User by the public of streets and ways and recognition of such user by the municipality may constitute such streets and ways public as to municipal liability. Thus a municipality, it was held, was liable for injuries resulting from defective sidewalks constructed on private property where they were treated by the city as public walks and permitted to be used as such." *Richmond v. Marseilles,* 190 Ill. App., 227.

In *Taake v. City of Seattle,* 47 Pac., 220, it was held no defense to an action for damages due to a defect in a street that the city did not have title to the land. The Court said: "If, as a matter of fact, this street was laid out by the city of Seattle, was used by it as a street, and the public were invited to use it as such, it becomes its duty to maintain

it in proper repair. . . . The question in this case is, was there testimony tending to show the user by the public, at the instance or invitation of the city, of the street at the place where the injury was sustained."

The rule laid down by McQuillin is further supported by what was said in *Mayor v. Sheffield,* 71 U. S., 189, quoted in *Gilbreath v. Greensboro,* 153 N. C., 396, as follows: "If the authorities of a city or town have treated a place as a public street, taking charge of it and regulating it as they do other streets, and an individual is injured in consequence of the negligent and careless manner in which this is done, the corporation cannot, when it is sued for such injury, throw the party upon an inquiry into the regularity of the proceedings by which the land became a street or into the authority by which the street was originally established."

In *Browning v. City of Aurora,* 190 Mo. App., 477, it was said: "The defendant city had for years maintained this culvert with knowledge of its use by the public as a foot bridge and it ought to be required to respond for the consequences of its negligence in maintaining it."

In *Gilpatrick v. Biddeford,* 51 Me., 182, it was held that repairs by the city upon a private way in public use was evidence that it had been established as a public way. And in *Benton v. St. Louis,* 217 Mo., 687, it was held that "long public user as of public right" had the same effect.

In *Louisville & N. R. v. Muncey,* 17 S. W. (2nd), 422, it was said: "The record in this case appears to show that the city had no title to the land on either side of the river at the landing point of the bridge, or where the approaches to the bridge were located. In fact, the bridge was not located on property belonging to the city of Hazard, and the city had no authority, in writing at least, to erect the bridge across the right of way of the railroad company. The acts of the railroad company in consenting to the construction of the bridge by the city amounted to a dedication, and, the city having accepted the dedication, the bridge is a public way of the city." It was held that the city was under duty to keep the bridge in reasonably safe condition for public travel.

While the exact question presented by this appeal has not heretofore been considered by this Court, we think the reasoning underlying the decisions from other jurisdictions and the authorities cited furnish a sound basis for our conclusion that where a municipality for the public convenience has constructed a bridge on a way permitted to be used by the public across private property between two streets, and has exercised control over it, and by its acts invited the public to travel over it, a duty would devolve upon the city to keep it in reasonably safe condition for that purpose. 20 L. R. A. (N. S.), 553; *Ackerman v. Williamsport,* 227 Pa., 591; *Seymour v. Salamanca,* 137 N. Y., 364; *Oliver v.*

*Worcester,* 102 Mass., 489 (502); *Gilbert v. Manchester,* 55 N. H., 298. This view finds additional support in what was said in *Spell v. Roseboro,* 214 N. C., 364, 199 S. E., 265.

Nor can it be successfully maintained that, since the negligence complained of was in the exercise of governmental functions for a public purpose, no liability for tort could arise. *Broome v. Charlotte,* 208 N. C., 729, 182 S. E., 325. The negligence here alleged relates to the failure of the city to maintain in a reasonably safe condition for public travel a bridge which had been built by the city within the city limits for the use of the public. This brings the case within the well recognized exception to the rule of non-liability for torts committed in the exercise of governmental functions. *Hamilton v. Rocky Mount,* 199 N. C., 504, 154 S. E., 844; *Bunch v. Edenton,* 90 N. C., 431; C. S., 2675.

The defense interposed by the demurrer, that the action of the city in constructing the bridge was *ultra vires,* cannot avail the defendant. The general rule seems to be that where a municipality acts upon matters within its general corporate powers, it may be held liable for acts done at an unauthorized place or in an unauthorized manner, or otherwise in excess of its powers. The city had general authority under its charter to build bridges over streams within the city limits, and if the location of the one in question was not on a city street, this would not be a sufficient departure from its corporate powers to relieve the city of liability for negligence in connection therewith under the plea of *ultra vires.* 43 C. J., 934; *Stoddard v. Saratoga Springs,* 127 N. Y., 261, 27 N. E., 1030; *Bator v. Ford Motor Co.,* 269 Mich., 648 (668); 2 Dillon Mun. Corp. (4th Ed.), sec. 971; 6 McQuillin Mun. Corp., secs. 2808, 2809. In *Love v. Raleigh,* 116 N. C., 296, 21 S. E., 503, it was held that to support the plea of *ultra vires* it must appear that the act in question lies wholly outside of the general or specific powers of the corporation conferred by its charter or by statute.

We are of opinion that the allegations of the complaint, liberally construed as required by the statute (C. S., 535), are sufficient to make out a case, and that the demurrer was improperly sustained.

The judgment sustaining the demurrer is
Reversed.

STACY, C. J., BARNHILL and WINBORNE, JJ., dissent.