49 N.J. Super. 363 (1958)
139 A.2d 779
JOSEPH FARKAS, PLAINTIFF-APPELLANT,
v.
BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF MIDDLESEX, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 17, 1958.
Decided March 24, 1958.
*365 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Robert N. Wilentz argued the cause for appellant (Messrs. Wilentz, Goldman, Spitzer & Sills, attorneys; Mr. Matthias D. Dileo, of counsel).
Mr. Samuel V. Convery argued the cause for respondent (Mr. Sam Weiss, on the brief).
*366 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from a County Court judgment of dismissal entered in defendant's favor on its motion made at the conclusion of plaintiff's opening. The suit was for injuries suffered when plaintiff was thrown from his motorcycle while riding along Main Street in Woodbridge Township. The complaint charged defendant with negligent maintenance of the road. The opening of plaintiff's counsel exposed the following factual contentions:
At the time of the accident plaintiff, a motorcycle policeman, was proceeding along Main Street in the course of his official duties. While passing over that portion of the street which is elevated above the New Jersey Turnpike and the Garden State Parkway, his motorcycle struck a hole in the macadam, he was catapulted some distance through the air and suffered severe bodily injuries.
Prior to 1949 Main Street was a county road which ran straight through the area where the three-level construction of Turnpike, Parkway and Main Street is located. At that time defendant county repaired and maintained the street along its entire length. In 1949 the Turnpike or the Parkway barricaded Main Street on either side of the present overpass.
The portion of Main Street on the upper level had been in a state of disrepair for some time prior to the accident. This fact was known to defendant through its authorities, agents and employees, and numerous complaints had been received about the condition. Plaintiff's counsel, in his opening, alleged that the State apparently had not done a good paving job when the overpass was constructed. The county had undertaken to repair Main Street at this point on several occasions during the months preceding the accident, when it fell into disrepair because of trucks and other vehicular traffic. Counsel charged that the work was of a temporary nature only, and negligently done, apparently because the county felt that the overpass was not its responsibility, but the State's. Only two days before the accident plaintiff and his superior officer had seen county employees *367 repairing the road on the overpass. Further repairs were made immediately after the accident. (We were informed at oral argument that the county road department foreman was in charge of the work.)
When plaintiff had concluded this factual recital in his opening, defendant moved for judgment for failure to establish a cause of action. The court granted its motion, apparently on the primary ground that defendant's action in making the repairs was without authority and therefore ultra vires; and secondly, that the repairs were made without the direction and participation of the county, its freeholder board never having formally authorized its agents and servants to repair the road.
The test to be applied on a motion for dismissal made after the plaintiff's opening is the same as where the motion is made at the close of plaintiff's case. The motion admits the truth of plaintiff's proffered evidence and every inference of fact that can logically and legitimately be drawn therefrom which is favorable to him. Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 170 (1955). Indeed, the rule should be even more liberally applied in the case of a motion made at the conclusion of plaintiff's opening, since he has not yet had the opportunity of presenting his testimony, but only a statement of its intended content.
Our present practice does not favor a dismissal on plaintiff's opening to the jury. A motion for dismissal should never be granted unless the facts are undisputed and the law free from doubt. As was pointed out in Sherman v. Josephson, 44 N.J. Super. 419, 425-426 (App. Div. 1957), at this point in the proceedings the trial court "is justified in exercising a most liberal discretion in disposing of the matter. The case is rare indeed where the interests of justice will not be served by withholding action on or by denying the motion and receiving the plaintiff's proof."
Counsel's opening statement is ordinarily intended to do no more than inform the jury in a general way of the nature of the action and the basic factual hypothesis projected, *368 so that they may better be prepared to understand the evidence. It is normally expected to be summary and succinct. It is not enough that the statement is lacking in ultimate definiteness; rather, it must clearly appear, after resolving all doubts in plaintiff's favor, that no cause of action whatsoever exists. Best v. District of Columbia, 291 U.S. 411, 415, 54 S.Ct. 487, 78 L.Ed. 882 (1933). And see Snyder v. I. Jay Realty Co., 46 N.J. Super. 323, 328 (App. Div. 1957); Ross v. Orr, 3 N.J. 277, 284 (1949).
Defendant's argument on its motion for dismissal before the trial court was that the part of Main Street passing over the Turnpike and Parkway had never been accepted by Middlesex County; the county had never formally undertaken the responsibilities which go with a county road, including repair, so that there was no direction or participation on its part which would expose it to liability for the conduct of its agents or employees in repairing the road, even if those repairs amounted to active wrongdoing. This argument, as has already been pointed out, was one of the reasons advanced by the trial court for granting the motion of dismissal, the other being that making repairs on this particular stretch of road, actually under State control, was ultra vires.
On the present appeal defendant apparently completely abandons these reasons for granting its motion of dismissal, for they are not advanced in the counter-statement of questions involved or in the body of its brief. Although plaintiff's brief is devoted to refuting the grounds relied on below, the answering brief proceeds to develop a completely different reason for upholding the dismissal. The argument now is that plaintiff's opening was clearly deficient in an element basic to his cause of action, for it revealed that he would be unable to prove the existence of active wrongdoing on defendant's part. Defendant further argues there was nothing in the opening to show that the result of defendant's alleged intervention by undertaking repairs to the overpass was to create a new, different, additional or increased hazard.
*369 Defendant's counsel made no mention at the oral argument of the reasons advanced on the trial level for the dismissal of the action until the court noted their abandonment in the brief. It was only at this point that he sought to salvage them by suggesting that they not be considered abandoned if they might possibly support the judgment under attack. We do not approve of the practice of counsel filing an appeal brief in support of the judgment below, devoted entirely to a ground other than that relied upon in the trial court, and then at oral argument trying to recapture and argue the reason or reasons advanced below. Such practice has the potential of completely misleading the appellant  although that did not happen in this case because, as noted, plaintiff devoted his original brief to demolishing the reasons given for dismissing his action. We might well refuse to consider defendant's request that the argument made at trial should not be considered abandoned. However, we have considered those reasons and find them without merit.
Concededly, the operation and maintenance of roads constitutes a governmental function. The factual contentions made in plaintiff's opening, all of which must be deemed true for the purpose of this appeal, show quite clearly that the county, through its agents and servants, made repairs to the portion of Main Street in question, both before and after the accident, and that these repairs were negligently done. The fact that the portion of Main Street on the overpass was not in fact a county road at the time of the accident is of no consequence, nor is the fact that the repairs were undertaken without formal authorization of the county governing authorities, or under their actual direction. What we said in Hartman v. City of Brigantine, 42 N.J. Super. 247 (App. Div. 1956), affirmed 23 N.J. 530 (1957), disposes of the questions of ultra vires and lack of open direction and participation by the county governing body in the repairs.
The county may not escape responsibility for its alleged tortious conduct since it had general authority to *370 make such repairs (see, e.g., R.S. 27:16-1 (d) and 27:19-1), and although they may have been made at an unauthorized place and in an unauthorized manner, they were not wholly or manifestly outside defendant's corporate powers. 18 McQuillin, Municipal Corporations (3d ed. 1950), § 53.60, p. 307; 63 C.J.S. Municipal Corporations § 754, p. 41 (1950); Augustine v. Town of Brant, 249 N.Y. 198, 163 N.E. 732 (Ct. App. 1928), reargument denied 250 N.Y. 537, 166 N.E. 315 (Ct. App. 1929); Stoddard v. Village of Saratoga Springs, 127 N.Y. 261, 27 N.E. 1030 (Ct. App. 1891); see also Cook v. Kansas City, 358 Mo. 296, 214 S.W.2d 430 (Sup. Ct. 1948); Whitacre v. City of Charlotte, 216 N.C. 687, 6 S.E.2d 558, 126 A.L.R. 438 (Sup. Ct. 1940); Bator v. Ford Motor Co., 269 Mich. 648, 257 N.W. 906 (Sup. Ct. 1934); Faucheux v. Town of St. Martinville, 120 La. 764, 45 So. 600 (Sup. Ct. 1908); Hathaway v. Osborne, 25 R.I. 249, 55 A. 700 (Sup. Ct. 1903); contrast Wheeler v. Essex Public Road Board, 39 N.J.L. 291 (E. & A. 1877), where the road board was held to be without "shadow of authority" to do what it did, viz., substitute in lieu of payment the erection of a new dam in place of the plaintiff's old one, damaged in the course of widening a road.
The repair work in this case was done by a road foreman and a group of laborers. Cf. Hartman v. City of Brigantine, above, where we held that the assistant road supervisor who had directed the work was high enough in the rank of municipal authority to establish participation by the county in the activity on the city street which resulted in the dangerous condition causing plaintiff's injury. Under the rationale of that case the action of defendant's road department in making repairs on the overpass which now links the portions of Main Street still left under county jurisdiction and control may well appear, after a trial has developed all the material facts, to be sufficient to implicate the county in liability for torts arising out of any action taken by its employees. Cf. Casale v. Housing Authority of City of Newark, 42 N.J. Super. 52 (App. Div. 1956), *371 and particularly the dissenting opinion of Judge Francis at page 63 of 42 N.J. Super.
We come, then, to the argument, first made by defendant on this appeal, that plaintiff's opening was deficient in establishing a prima facie case of negligence  i.e., active wrongdoing on defendant's part, or that its repairs created a new, different, additional or increased hazard. We find no merit in the arguments which defendant advances in support of this position. They are based upon a philosophy expressed in cases of another day, no longer finding acceptance in our present approach to the law of torts. The trend in New Jersey is undoubtedly toward expanding the tort liability of municipalities, and although "active wrongdoing" still remains the basis of such liability in respect to governmental functions, it has been said that it is sufficient if there has been a "negligent act of commission." Hartman v. City of Brigantine, above, 23 N.J. 530, 533 (1957); Milstrey v. City of Hackensack, 6 N.J. 400, 408 (1951). These and other recent cases exhibit a just readiness in our courts to find that the negligent conduct of a defendant municipality in the maintenance and care of a road included affirmative action which would support a jury determination of "active wrongdoing." See Latzoni v. City of Garfield, 22 N.J. 84 (1956); Taverna v. City of Hoboken, 43 N.J. Super. 160 (App. Div. 1956). If the condition causing the injury arises out of municipal action of any kind, as distinguished from inaction, there is a showing of active wrongdoing.
Here the charge is that in repairing the surface of the overpass the county employees did their work in so inefficient and so incomplete a manner that disrepair manifested itself within a short space of time. The consequence was a dangerous condition resulting in injuries to the plaintiff when his motorcycle struck a hole on the overpass. The failure of the county employees to do what they should have done in the course of their repair work may therefore properly be categorized as active wrongdoing. Casale v. Housing Authority of City of Newark, above, 42 N.J. *372 Super. at page 56; Milstrey v. City of Hackensack, above, 6 N.J. at page 407, which cited with approval the case of McClelland v. Manchester (1912), 1 K.B. 118, 127, where it was said that "If the work was imperfect and incomplete it becomes a case of misfeasance and not non-feasance, although damage was caused by an omission to do something that ought to have been done."
Reversed and remanded.